J. HANFORD McCOY *v.* CITY OF SISTERSVILLE *et al.*

. (CC 583)

Submitted March 8, 1938. Decided October 11, 1938.

*M. H. Willis* and *Paul J. Shiben,* for plaintiff.

*Chas. N. Kimball* and *W. J. Brennan,* for defendants.

*J. O. Henson,* amicus curiae.

FOX, JUDGE:

The City of Sistersville, operating under a special charter, adopted an ordinance in the year 1933, which was re-adopted in 1934 and 1935, imposing rates, fees and rentals for certain essential or special services under the alleged authority of Chapter 27, Acts of the Legislature, First Extra. Session 1933, amending Code 1931, 8-4-20. J. Hansford McCoy, a resident, property owner and taxpayer of the city, filed his suit in the circuit court of Tyler County, attacking the legality of the assessment against him under the said ordinances, and sought and obtained a temporary injunction against the enforcement thereof. The city interposed its demurrer to the bill filed in said suit, which the court overruled, and the questions arising thereon have been certified to this court.

The ordinances in question provide for the assessment of rates, fees and rentals for five essential or special services: (1) fire protection; (2) street lighting; (3) sanitary sewerage; (4) garbage collection; and (5) street cleaning. As to street cleaning services, no assessment was made for the fiscal years 1933-4 and 1934-5, but was made for the year 1935-6, and, as to the other services named, assessments were made for each of the fiscal

years beginning on the first day of July, 1933, 1934 and 1935. Assessments were likewise made for the fiscal year 1936-7, but no ordinance therefor having been adopted by the city, the right to collect the same is not now insisted on.

It will be noted that the asserted right to collect the assessments made under said ordinances depends wholly upon the statute referred to, and the extent to which the powers therein granted to municipalities of a certain class may be exercised under Section 1, Article 10, of the Constitution, as amended, commonly known as the tax limitation amendment, and Section 9 of said article. The provision of the Act relied on is here quoted:

"Whenever in the judgment of the municipal authority of any municipal corporation organized under special charter in this state the public health, safety, comfort and/or well being demands the continuance, maintenance, installation or improvement of any essential or special service, including police and fire protection, street lighting, sewerage and sewage disposal, garbage collection and disposal, street cleaning, and the public revenues of such municipality are not sufficient for the purpose, the municipal authority may by proper ordinance provide for the continuance, maintenance, installation and/or improvement of such special service, together with suitable regulations governing such service, and may impose upon the users of such special service such rates, fees and rentals as are necessary to pay the cost of such special service, and may provide for the collection of such rates, fees and rentals in the same manner as municipal taxes are collected, or otherwise, as the municipal authority shall elect, and may provide penalties for any violation of such ordinance."

The purpose of the Act, to provide a way by which "essential or special services", including fire protection, street lighting, sewerage, garbage collecting and street

cleaning, may be maintained, is clear; and the right of the legislature to authorize the assessment of rates, fees and rentals to provide for the cost thereof, is not seriously disputed. The difficulty grows out of the methods employed by the city in seeking to avail itself of the benefits of the Act. The Act provides that the city may impose upon the users of such special services such rates, fees and rentals as are necessary to pay the cost thereof. The position of the plaintiff, broadly stated, is that the assessment for the cost of these services is not imposed on the users thereof, but upon property, or confined to owners of property and is, in effect, an additional tax on property, in violation of the tax limitation amendment, and the uniformity provision of Section 9, Article X of the Constitution. The city contends that the services provided for are special benefits to the property affected thereby, and that the fees, rates and charges in question are not general taxation and may legally be imposed under the Act above quoted.

The statute relied upon is constitutional. The legislature had the power to clothe the municipality with authority to continue the essential or special services mentioned therein, and to impose assessments upon the users thereof to meet the costs of such services. The Act being constitutional, it must, of course, be assumed that the legislature meant to make it effective, and we will, therefore, give to the Act such interpretation as will effectuate its purposes, and not add to the difficulties of its enforcement. We fully recognize the difficulties connected with the administration of a power of this character, and the impossibility of an exact equality of burden. With these views in mind, we have examined the ordinances with care, and find that as to each service for which an assessment of rates, fees or rental is imposed, the burden rests upon owners of property. No attempt is made to impose any burden on the users of such services as a class except, of course, as to that class of users who are both owners of property and users of the services. Under the ordinances, such assessments

are based (1) as to fire protection, upon the value of buildings and chattels; (2) as to street lighting, frontage of lots abutting on streets, alleys and lighted ways; (3) as to sewerage service, the number of connections, the owner of the property being held responsible; (4) as to garbage collection, according to the number of households, and in this case, the owner of the household, not the occupier, is held liable; and (5) as to street cleaning, the frontage of lots abutting upon any specially cleaned street. The user of any service provided for, not a property owner, escapes any direct burden. Whether he will pay any part thereof by increased rent or otherwise is problematical, and insufficient as a basis for any statement that he pays any part of the cost of such services.

The theory that the rates, fees and rentals in question were intended to apply to property especially benefited by the services provided for finds no support in the Act on which the ordinances are based. That Act does not rest the power therein granted upon the theory that the services provided for are public improvements resulting in special benefits to owners of property, but that the services are essential, and that the users, by methods other than general taxation, must pay the expense thereof. None of the services provided for is permanent in its nature, each depending on ordinances which may be renewed or abandoned, and, if abandoned, leave no added value to property of any kind. That they are services, the cost whereof is to be paid from funds derived from sources other than general taxation, is implied in the Act itself, because it can only be made effective when "the public revenues of such municipality are not sufficient for the purposes" of maintaining the essential or special services mentioned. It appears from the bill that the regular tax levies available to the city had been used, from which it follows, of course, that the fees, rentals and charges cannot be defended as general taxation. The city is therefore driven to rest its claim on the basis that the charges imposed are special assessments under the

Act, and that Act provides that assessments may be imposed upon the users of the services intended to be provided for, and impliedly negatives the idea that they be imposed on property alone or upon a class of people owning property. Proceeding under the Act, the city is bound by its terms.

The city attempts to conform to the terms of the Act by providing in Section 2 of the ordinances that rates, fees and rentals are imposed upon the "users of each and such service". However, we must judge the ordinances by their effect and not from a statement of what is proposed to be done. As stated above, the ordinances do not impose charges upon all users, but only a limited class thereof, and make ownership of property the basis of the charges imposed.

Bearing upon what we may reasonably conclude the legislature had in mind in enacting this law, and the persons sought to be affected thereby, attention is called to the fact that an ordinance of this character is required to be published once a week for two successive weeks in two local newspapers, and if ten per cent of the registered voters, by written petition, protest against the same, it shall not become effective until it has been ratified by a majority of the votes cast by the duly qualified voters of such municipality at an election duly and regularly held as provided by the laws and ordinances thereof. This provision, it seems to us, necessarily implies that the charges imposed must, in theory at least, apply to all users of the services provided for, living within the municipality.

In this connection, it may not be amiss to refer to the constitutional principle that municipal taxation shall be uniform. Constitution, Article X, Section 9. We are, of course, familiar with the holdings of this and other courts that such a provision applies to general taxation, and it may be that in a matter of assessments, equality and uniformity cannot be reached, and that a fair and reasonable administration of a law authorizing assessments is all that can be reasonably required. But in all

cases where special assessments have been upheld, an attempt has been made to impose them with such equality and uniformity as is possible under the circumstances, and they rest upon the principle that private property is benefited by the improvement for which the assessment is made. *Parkersburg* v. *Tavenner,* 42 W. Va. 486, 26 S. E. 179; *Hager* v. *Melton,* 66 W. Va. 62, 66 S. E. 13; *Heavner* v. *Elkins,* 69 W. Va. 255, 71 S. E. 184, 52 L. R. A. (N. S.) 1035, Ann. Cas. 1913 A, 653; *City of St. Marys* v. *Locke,* 73 W. Va. 30, 80 S. E. 841; *Holswade* v. *Huntington,* 96 W. Va. 124, 122 S. E. 449, illustrate the principle applied to paving assessments which have their foundation upon special benefits. These cases were decided upon the statute then existing and carried into Code, 8-8, which specifically provides for assessments against the owner or occupant of real estate abutting on a street or alley improved by a sidewalk or pavement, for the expense of such improvement and on a frontage basis. It cannot be said that the services provided for in the questioned ordinances are special benefits to property in the sense that the paving of a street in front of a property, which permanently adds to its value, is a special benefit for which special assessments may be imposed. The ordinances in question, as applied to fire protection, may be said to benefit, temporarily, the owners of property, but no permanent value is added to the property affected thereby. As to street lighting, sewerage, garbage collection and street cleaning, little, if any, benefits accrue to the owners of property which are not shared by the public at large. While it may be said that fire protection, lighted and clean streets, good sewerage and the safe health conditions which a proper disposal of garbage develops, all tend to add value to property in a given community, it may also be said that good streets, modern school buildings, gymnasiums, auditoriums, parks, playgrounds and numerous other public conveniences which make urban life attractive, add to the value of property. However, none of these conveniences are usually classified as giving a peculiar and added permanent value to

a particular property, such as to justify a special assessment of the nature of one imposed for street paving or other improvements which unquestionably do add to the permanent value of property affected thereby.

The ordinance as to fire protection provides for an assessment on buildings and chattels. Giving to the statute, and the ordinance adopted thereunder, a liberal construction, the owners of the buildings and chattels may fairly be said to be the users of the services provided for their protection. True, these assessments are based on the value of the buildings and chattels, but no reference is made to the assessed values on which levies are laid, nor is the entire value of real estate in particular made the basis of the assessment, but only the buildings located thereon. If the assessed value were used, and the fee assessed, a serious question would have been raised as to a violation of the limitation amendment, and as the matter stands, the validity of the assessment as to personal property remains in doubt, the only saving feature being that the assessment as to this class of property is not based on the assessed value for tax purposes. On the whole, we conclude and hold that the proposed ordinance as applied to fire protection should be upheld.

But we cannot go further. Strong insistence is made in support of the ordinance as to street lighting, and we have carefully studied the briefs on that question, including that filed by counsel appearing as *amicus curiae*. The cases cited in support of the contention as to street lighting, in our opinion, do nothing more than support the theory that street lighting equipment, and possibly the furnishing of electric current, are public improvements, the cost of which may be assessed on property especially benefited thereby, where there is legislative authority therefor. In each case cited, there was legislative authority behind the ordinance imposing an assessment of the same general nature as our statute, Code, 8-8, concerning paving. In the case at bar, such legislative authority is wholly lacking, and we do not think the authority cited applicable to the situation presented here.

Had the legislature provided that the cost of these services be imposed upon the owners of real estate, either on a lineal foot basis or the value of the property affected, the question would have arisen as to whether or not the levy limitation had been violated, and whether the Act should be sustained under the theory of special benefits. It did not choose to do so, and we see no reason to construe such meaning into the statute as enacted.

There are other considerations which strengthen our view that the ordinance as to street lighting cannot be upheld. It may be true that a system of street lighting confers a special benefit on a particular individual who happens to own real estate on an important highway, particularly in the business section of the city; yet the furnishing of street lights is a governmental responsibility and the owner of such a building has, presumably, on account of its location and value, paid his fair share of the expense of the entire street lighting system of the city, including the section in which his property is located. Under these circumstances, it is difficult to accept a theory that the owner of such building must be assessed with the entire cost of lighting the street, to the exclusion of a tenant who may have a stock of merchandise in the building equal to or in excess of the value of the building, and to the exclusion of those who use the street, either as pedestrians or by the various means of transportation used in carrying on traffic over the streets so lighted. What seems to us the inherent injustice of imposing such a burden on a particular class of individuals does not encourage us to give a strained construction to the statute in question. With all the admitted difficulty in working out a formula under which the provisions of the statute may be carried out, we are unable to accept as sound the arguments advanced that the word "users" be given a meaning under which a special class of property owners are laid under a burden which, in all fairness, should be borne by all alike, in proportion to property valuation under general taxation; but if this cannot be provided for under our levy limita-

tion, a more equitable plan than that proposed should be adopted. This court cannot set itself up as an arbiter of what is fair. That is a legislative function. But the legislature having imposed the burden of these services on the users thereof, we are not disposed to give its enactment a meaning not fairly to be drawn from the language used, nor compatible with what we believe to be a just distribution of the burden of the services provided for in the Act in question. What we have said with respect to street lighting more strongly applies to the other services provided for, other than fire protection, and it is not considered necessary to discuss them in detail. If the assessment for street lighting cannot be sustained, the assessments for such other services cannot be.

We have not entered into the maze of authorities cited on the minor issues raised on the record. We have considered the case as one to be decided under our Constitution, and the particular statute relied on. We have considered the historical background prompting the enactment of this particular Act, and by reason thereof we have given it a liberal interpretation, although this involves a departure from the general rule applied to the construction of tax laws. However, we are unable to extend that liberality to the point where we can uphold a plain assessment against property and the owners of property to the practical exclusion of every other class of people living in a municipality, where the act itself imposes the cost of the special services provided for upon the users thereof. As stated above, we hold that the ordinance as to fire protection comes within the provisions of the statute, liberally construed, and the ruling of the circuit court will be reversed insofar as it affects the ordinance with respect to fire protection, and in all other respects, affirmed.

*Affirmed in part; reversed in part; remanded.*