298 S.E.2d 820

**Frank T. HARE, Robert A. Hare, and William Hare Sons Co., a Corporation, on behalf of themselves and all other persons similarly situated**

v.

**The CITY OF WHEELING, A Municipal Corporation.**

**No. 15635.**

Supreme Court of Appeals of West Virginia.

Oct. 19, 1982.

Bailey, Byrum & Vieweg, John Preston Bailey and George G. Bailey, Wheeling, for appellants.

John Marshall, III, Wheeling, for appellee.

Higinbotham & Higinbotham and George R. Higinbotham, Fairmont, for amicus curiae, The City of Fairmont.

McHUGH, Justice:

In this class action this Court is asked to review the constitutional validity of a police service charge promulgated by the City of Wheeling, West Virginia.

This action is before this Court upon the petition of the appellants, Frank T. Hare, Robert A. Hare and William Hare Sons Co., et al., for an appeal from the final order of the Circuit Court of Ohio County, West Virginia. Pursuant to that order, entered on March 29, 1982, the circuit court refused to enjoin the City of Wheeling from taking action with respect to the enforcement and collection of a police service charge promulgated by that city.

By order entered on July 7, 1982, this Court granted the appeal in this action. By order entered on August 5, 1982, this Court, pursuant to *W.Va.Code*, 58–5–25 [1931], granted the appellants' motion for leave to move to reverse.

This action was argued before this Court on September 29, 1982. By order entered on September 30, 1982, this Court sched-uled this action for reargument. By that order the parties were directed to file supplemental briefs. A copy of that order was transmitted to the West Virginia Municipal League and the city attorneys for Charleston, Huntington, Beckley and Buckhannon inviting them to address the issues relevant to this action. No reply to that invitation was received by this Court other than from the City of Beckley which city informed this Court that its ordinances were dissimilar to those involved in this action. On October 8, 1982, the City of Fairmont filed an *amicus curiae* brief. By letter dated October 6, 1982, the Attorney General of West Virginia indicated that he did not wish to participate in the reargument of this action.

On October 12, 1982, this action was reargued before this Court. This Court has before it the petition for appeal, the motion to reverse, all matters of record and the briefs and argument of counsel.

On April 7, 1981, the City of Wheeling promulgated Ordinance No. 7225 which established an annual police service charge to be imposed upon the owners of buildings and tangible personal property. That ordinance provided, in part, as follows:

Section 791.01 TAX LEVIED.

An annual charge against the owner or owners of all residental [sic], commercial, industrial or other building or buildings, of every kind and nature and regardless of the type or types of construction, within the City, and against the owner or owners of all tangible personal property situated within the City, of every kind and nature, in the amount of twenty-five-hundredths of one percent of the value of such residential, commercial, industrial or other building or buildings and of such tangible personal property, such value being the value of such property as determined by Council as set forth under Sections 791.02 and 791.03, shall be collected by the Treasurer to partially defray the expense of continuing, maintaining and improving police protection for such residential, commercial, industrial or other building or buildings and such tangible personal property. In no event

shall the amount collected from the taxpayer under this article be less than two dollars ($2.00), which amount shall be in all cases a minimum tax for such police protection within the City.

Section 791.02 COUNCIL TO DETERMINE PROPERTY VALUE.

The police service charge provided for in Section 791.01 shall be payable for each fiscal year of the City, which fiscal year commences on July 1 of a given year and ends on June 30 of the following year. The value of all residential, industrial, commercial or other building or buildings and tangible personal property within the City shall be determined by Council on or before July 15 of each fiscal year. A copy of each such determination made by Council shall be placed on file in the office of the City Treasurer within three days after such determination is made and shall be subject to public inspection in that office.

In conjunction with Ordinance No. 7225, the City of Wheeling on June 16, 1981, promulgated Ordinance No. 7278. The purpose of Ordinance No. 7278 was to determine property values in the city in order that police service charges could be established. That ordinance provided, in part, as follows:

Section 1. The City Manager is hereby authorized and directed to expend funds of the City of Wheeling in the amount of Two Thousand Five Hundred Dollars, ($2,500.00) with Harold P. Armbrecht, Assessor, Ohio County, Wheeling, West Virginia, for a complete set of 1980 Land and Personal Property Books for use in billing 1980–81 City Police Service Charges and Fire Service Charges to be charged to Treasury/Contractual Services—Assessor's List.

Section 2. The assessments set forth in the aforesaid Land and Property Books as they relate to property within the City of Wheeling are hereby determined to be the value of all residential, industrial, commercial or other building or buildings and tangible personal property within the City, pursuant to Section 791.02 and 793.02 of the *Code of the City of Wheeling.*

Also, on June 16, 1981, the City of Wheeling promulgated Ordinance No. 7283. That ordinance raised the minimum police service charge from $2.00 to $10.00.

In February or March, 1982, the City of Wheeling began billing property owners for the police service charge. In March, 1982, the appellants commenced this action. The validity of the police service charge was upheld by the circuit court by order entered on March 29, 1982.

In challenging the validity of the police service charge, the appellants in this appeal contend that, because some users (property owners) and not all users of police services are liable for the police service charge, the charge violates the provisions of *W. Va. Code,* 8–13–13 [1971]. The appellants further contend that, because the police service charge is directly related to assessed property values within the city, the charge is, in fact, an *ad valorem* property tax and, as such, is in violation of *W. Va. Const.,* art. X, § 1. That constitutional provision is known as the "Tax Limitation Amendment." In addition, the appellants raise other grounds challenging the validity of the police service charge.

The City of Wheeling, on the other hand, contends that the ordinances in question establishing the police service charge are lawful and that the final order of the circuit court should be affirmed.[1]

---

1. The Circuit court did not view as critical the question of whether the police service charge was, in fact, an *ad valorem* tax upon property. The circuit court did not address the question of whether the police service charge, as a property tax, exceeded the limits established by the Tax Limitation Amendment. Rather, the circuit court relied principally upon *Ellison v. City of Parkersburg,* 168 W.Va. 468, 284 S.E.2d 903 (1981), and concluded that the police service charge was reasonable.

In *Ellison v. City of Parkersburg,* the City of Parkersburg enacted an ordinance which provided, in part, as follows: "(a) Each property owner or occupant of a residential unit shall be responsible for the payment of a charge of Forty-eight Dollars ($48.00) per year for solid waste collection and disposal service per residential unit." That ordinance further provided that the owners of residential units would be billed for the charge. Bills could be rendered to the occu-

Inasmuch as this Court is of the opinion that the police service charge violates *W.Va.Const.*, art. X, § 1, the Tax Limitation Amendment, the remaining issues raised by the appellants need not be addressed.

The Tax Limitation Amendment was ratified on November 8, 1932. That amendment imposes limits beyond which property may not be subjected to taxation within this State.[2] That amendment provides, in part:

Subject to the exceptions in this section contained, taxation shall be equal and uniform throughout the State, and all property, both real and personal, shall be taxed in proportion to its value to be ascertained as directed by law. No one species of property from which a tax may be collected shall be taxed higher than any other species of property of equal value; except that the aggregate of taxes assessed in any one year upon personal property employed exclusively in agriculture, including horticulture and grazing, products of agriculture as above defined, including livestock, while owned by the producer and money, notes, bonds, bills and accounts receivable, stocks and other similar intangible personal property shall not exceed fifty cents on each one hundred dollars of value thereon and upon all property owned, used and occupied by the owner thereof exclusively for residential purposes and upon farms occupied and cultivated by their owners or bona fide tenants one dollar; and upon all other property situated outside of municipalities, one dollar and fifty cents; and upon all other such property situated within municipalities, two dollars; and the legislature shall further provide by general law, for increasing the maximum rates, authorized to be fixed, by the different levying bodies upon all classes of property, by submitting the question to the voters of the taxing units affected, but no increase shall be effective unless

---

pants of residential units, however, upon application.

In *Ellison*, this Court held that the circuit court committed error in holding the ordinance to be null and void. Contrasting the ordinance in *McCoy v. Sistersville*, 120 W.Va. 471, 199 S.E. 260 (1938), with the Parkersburg ordinance, this Court stated as follows:

The ordinance here charges owners and occupants. Unlike the ordinance in *McCoy v. Sistersville*, the ordinance here under consideration does not impose "the cost of such services . . . on property or the owners of property *to the exclusion of other users of such services.*" (Emphasis added.) Parkersburg's ordinance, rather, sets up a method whereby liability for the charge is shared between the owner and occupant of the property. . . .

168 W.Va. at 471, 284 S.E.2d at 905.

Specifically, this Court in *Ellison* concluded that the Parkersburg ordinance operated fairly and effectively to place the cost of the service in question upon the user of the service. As this Court recognized:

The standard of review of an ordinance exercising such power as that granted by *W.Va.Code*, 8–13–13 [1971] is the reasonableness of the ordinance. *See Harvey v. Elkins*, 65 W.Va. 305, 64 S.E. 247 (1909). The determination of whether an ordinance reasonably serves the purpose for which it was enacted is initially made by the municipal authorities. Their passage of the ordinance gives it a presumptive validity and a court should not hold the ordinance to be invalid unless it is clear that the ordinance is unreasonable. *Henderson v. Bluefield*, 98 W.Va. 640, 127 S.E. 492 (1925).

168 W.Va. at 472, 284 S.E.2d at 906.

2. In *Bee v. City of Huntington*, 114 W.Va. 40, 171 S.E. 539 (1933), Judge Kenna in his concurring opinion stated the purpose of the Tax Limitation Amendment to be as follows:

It seems to me manifest that the primary purpose of the tax amendment was to procure by limitation of levies a reduction of the taxes upon property throughout the state. Because of the fact that the levies for state purposes have always been negligible as compared to the levies of local bodies, it is plain that the tax amendment had for its principal purpose the limitation of the power of local levying bodies to impose taxes upon property. There can be no doubt that the levies laid by counties, school districts, and municipalities upon real and personal property, created the burden from which the people expressed their determination to rid themselves by the overwhelming adoption of the tax amendment. This well-known fundamental purpose is, to my mind, the cardinal rule by which the tax amendment must be interpreted. At the same time, it must be presumed that it was not the purpose of the tax amendment to invite attempted repudiation of debts, to bring about an abandonment or abdication of local self-government, nor to destroy the credit of the various taxing units throughout the state.

114 W.Va. at 51, 171 S.E. at 544.

at least sixty percent of the qualified voters shall favor such increase, and such increase shall not continue for a longer period than three years at any one time, and shall never exceed by more than fifty percent the maximum rate herein provided and prescribed by law; and the revenue derived from this source shall be apportioned by the legislature among the levying units of the State in proportion to the levy laid in said units upon real and other personal property. . . . [3]

In response to the Tax Limitation Amendment, the West Virginia Legislature enacted *W.Va.Code*, 11–8–1, *et seq.* The purpose of that article is generally to provide the maximum rates, within the restrictions of the Tax Limitation Amendment, for levies which may be laid upon property by the various taxing units of the State. Taxing units are defined in *W.Va.Code*, 11–8–4 [1933], municipalities constituting one such unit. Property is classified for levy purposes by *W.Va.Code*, 11–8–5 [1961], and the aggregate of taxes imposed upon the different property classifications by the taxing units is established by *W.Va. Code*, 11–8–6 [1939].[4] The specific levies permitted to be imposed by each taxing unit, such levies to be within the aggregate levy, is provided by *W.Va.Code*, 11–8–6a through *W.Va.Code*, 11–8–7. The maxi-

mum levy which may be imposed by municipalities is provided by *W.Va.Code*, 11–8–6d [1949].[5]

It is important to note that in this action counsel for the City of Wheeling informed this Court that, without regard to the police service charge, property within the city is presently taxed at the maximum amount permitted by the Tax Limitation Amendment and *W.Va.Code*, 11–8–6d [1949]. The issue before this Court, therefore, is whether the police service charge promulgated by the City of Wheeling was a fee not precluded by the Tax Limitation Amendment, or whether the police service charge was, in fact, an *ad valorem* tax upon property enacted in violation of the Tax Limitation Amendment.

The police service charge was ostensibly promulgated pursuant to *W.Va.Code*, 8–13–13 [1971], which statute permits municipalities to impose fees and charges for certain essential or special municipal services. That statute provides, in part, as follows: [6]

Notwithstanding any charter provisions to the contrary, every municipality which furnishes any essential or special municipal service, including, but not limited to, police and fire protection, parking facilities on the streets or otherwise, parks and recreational facilities, street

---

**3.** Justice McGraw, writing for the majority, discussed the Tax Limitation Amendment in *Killen v. Logan County Commission*, 170 W.Va. 602, 295 S.E.2d 689 (1982).

**4.** Chief Justice Miller, concurring in *Killen, supra*, discussed the provisions of *W.Va.Code*, 11–8–1, *et seq.*, in relation to the Tax Limitation Amendment.

**5.** *W.Va.Code*, 11–8–6d [1949], provides as follows:

The governing body of a municipality is hereby authorized to lay not in excess of the following maximum levies, for the purposes specified, and in the following order:
(1) For the payment of (a) principal and interest upon bonded indebtedness incurred prior to the adoption of the Tax Limitation Amendment; and to the extent not so required, (b) other legally incurred contractual indebtedness, not bonded, if any, incurred prior to the adoption of the Tax Limitation Amendment, as follows: On Class I property,

one and five tenths cents; on Class II property, three cents; and on Class IV property, six cents.
(2) For general current expense purposes, as follows: On Class I property, eleven cents; on Class II property, twenty-two cents; and on Class IV property, forty-four cents.

**6.** A review of the legislative history of *W.Va. Code*, 8–13–13 [1971], reveals an interrelationship between that statute and the Tax Limitation Amendment. That statute, first enacted in 1921, authorized taxation for the creation of a municipal band fund for public concerts. *See* Barnes' *W.Va.Code Annot.*, ch. 47, § 62 (1923). After the ratification of the Tax Limitation Amendment in 1932, the predecessor to *W.Va.Code*, 8–13–13 [1971] was, in 1933, amended. The 1933 and 1971 versions of *W.Va.Code*, 8–13–13, are similar. It is clear that the Tax Limitation Amendment was taken into consideration by the West Virginia Legislature when in 1933 it radically changed the predecessor to *W.Va.Code*, 8–13–13 [1971].

cleaning, street lighting, street maintenance and improvement, sewerage and sewage disposal, and the collection and disposal of garbage, refuse, waste, ashes, trash and any other similar matter, shall have plenary power and authority to provide by ordinance for the installation, continuance, maintenance or improvement of such service, to make reasonable regulations with respect thereto, and to impose by ordinance upon the users of such service reasonable rates, fees and charges to be collected in the manner specified in the ordinance.... [7]

In Syllabus point 1 in *Hukle v. City of Huntington*, 134 W.Va. 249, 58 S.E.2d 780 (1950), this Court, citing *City of Fairmont v. Bishop*, 68 W.Va. 308, 312–13, 69 S.E. 802, 803 (1910), held as follows:

A municipality has no inherent power to levy taxes; it can do so only by virtue of the authority delegated to it by the legislature. Its powers are limited, and the statute vesting it with power to tax must be strictly construed and strictly followed; in construing the statute all

doubt should be resolved against the city and in favor of the taxpayer.

*See also* 16 *E. McQuillin, The Law of Municipal Corporations* § 44.05 (R. Eickhoff & M. Meier 3rd ed. rev. 1979).

Ordinance No. 7225 establishing the police service charge refers to that charge as a "Tax Levied" and further states that the "taxpayer" shall pay a minimum amount for police protection within the city. On the other hand, both the City of Wheeling and the City of Fairmont (*amicus curiae*) maintain that Ordinance No. 7225 merely established a "fee" or "charge," rather than a tax. In that regard, language found in *Dawson v. Kentucky Distilleries & Warehouse Co.*, 255 U.S. 288, 41 S.Ct. 272, 65 L.Ed. 638 (1921), is relevant: "The name by which the tax is described in the statute is, of course, immaterial. Its character must be determined by its incidents...." 255 U.S. at 292, 41 S.Ct. at 274, 65 L.Ed. at 645. Similarly, in *Hukle v. City of Huntington, supra,* this Court stated as follows: "It is a well-nigh universal principle that courts will determine and classify taxation on the basis of realities, rather than what

7. Prior decisions of this Court have not directly addressed the validity of a municipal ordinance, promulgated pursuant to *W.Va.Code*, 8–13–13 [1971], in terms of whether such ordinance constituted an *ad valorem* tax upon property in excess of the limitations established by the Tax Limitation Amendment.

In *McCoy v. City of Sistersville, supra,* this Court held invalid ordinances relating to (1) street lighting, (2) sanitary sewerage, (3) garbage collection and (4) street cleaning. The basis of that decision was that such ordinances imposed, in violation of the predecessor of *W.Va.Code*, 8–13–13 [1971], a burden upon the owners of property, rather than upon all users of the services. A fire protection ordinance was upheld in *McCoy* upon the theory that property owners were the primary users of the fire protection service. However, with respect to the fire protection ordinance, this Court noted that had the entire value of the real estate and the assessed value for tax purposes of personal property been used as a basis for the fire protection charge, "a serious question would have been raised as to a violation of the limitation amendment...." 120 W.Va. at 478, 99 S.E. at 263.

The predecessor of *W.Va.Code*, 8–13–13 [1971], was cited in *City of Moundsville v. Steele*, 152 W.Va. 465, 164 S.E.2d 430 (1968). In that action, the city promulgated an ordinance imposing a charge for street maintenance upon

occupiers of improved property abutting the streets of the city. The amount of the charge was twenty-five cents per front foot of improved property abutting the street. This Court upheld the ordinance upon the basis that the classification by the city of occupiers of improved property abutting the streets as users of the street service was a valid and reasonable classification.

In *City of Charleston v. Board of Education of the County of Kanawha*, 158 W.Va. 141, 209 S.E.2d 55 (1974), this Court held that *W.Va. Code*, 8–13–13 [1971], authorized a city to impose upon a county board of education a fire service fee. The amount of that fee was based upon the value of buildings. The facts in that action were, therefore, somewhat similar to the facts in the action before this Court. However, this Court in *City of Charleston* did not consider whether the fire service fee constituted an *ad valorem* tax upon property in excess of the limits imposed by the Tax Limitation Amendment.

*See also Duling Bros. Co. v. City of Huntington*, 120 W.Va. 85, 196 S.E. 552 (1938), where this Court upheld a special assessment imposed by a city upon certain real property for the construction of a flood wall. Finding that the special assessment was not discriminatory against the real property subject to the assessment, this Court noted that the rates payable were "apportioned to the danger of the several zones from flood." 120 W.Va. at 91, 196 S.E. at 555.

the tax is called in the taxing statute or ordinance." 134 W.Va. at 255, 58 S.E.2d at 783. Thus, regardless of the name given by the City of Wheeling to Ordinance No. 7225, and the other ordinances in question, such ordinances are invalid if contrary to the Tax Limitation Amendment and *W.Va. Code*, 11–8–6d [1949].

It is without question that the police service charge in this action is, in fact, an *ad valorem* tax upon property. The ordinances were imposed upon the owners of property within the City of Wheeling, and the amount to be collected was directly related to the assessed value of that property. Pursuant to Ordinance No. 7278, the value of property for purposes of the ordinances was to be determined from the land books and personal property books of the Ohio County Assessor.

Furthermore, the tax burden imposed upon property within the City of Wheeling was at the maximum level permitted by the Tax Limitation Amendment, without regard to the police service charge. The additional burden of the police service charge imposed upon property within the city violates that constitutional provision.

Accordingly, we hold that where certain ordinances of the City of Wheeling impose upon owners of property a police service charge based upon the value of property, as determined from the land books and personal property books of the Ohio County Assessor, such ordinances impose, in fact, an *ad valorem* tax upon property, and where, without regard to the police service charge, property within the City of Wheeling is taxed to the maximum amount permitted under *W.Va.Const.*, art. X, § 1, known as the "Tax Limitation Amendment," and *W.Va.Code*, 11–8–6d [1949], such ordinances violate that constitutional provision.

This Court recognizes the financial plight of municipalities and the continuing need to generate revenue. However, this Court is compelled by the Tax Limitation Amendment to insure that the tax burden of West Virginians is not in excess of amounts authorized by our Constitution. That constitutional amendment expresses the will of the people of this State to impose limits upon the taxation of property. No branch or agency of government may circumvent the mandate of the citizens which is reflected by that Amendment.

Upon all of the above, ordinances of the City of Wheeling, Nos. 7225, 7278 and 7283, are hereby declared void, and the final order of the Circuit Court of Ohio County is reversed.

Reversed.