452 S.E.2d 724

CLAY COUNTY CITIZENS FOR FAIR TAXATION, et al., Appellants,

v.

The CLAY COUNTY COMMISSION, in its Capacity as a Local Governmental Entity of the State of West Virginia; Jerry Bird, in His Capacity as President of the Clay County Commission; Ronald R. Haynes, in His Capacity as a Member of the Clay County Commission; and R.T. Sizemore, in His Capacity as a Member of the Clay County Commission, Appellees.

No. 22256.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 1, 1994.

Decided Dec. 14, 1994.

Michael C. Farber, Sutton, for appellants.

Jeffery A. Davis, Pros. Atty., Clay County, Clay, for appellees.

NEELY, Justice:

■ In the circuit court, the appellants[1] challenged the constitutionality of *W.Va.Code* 7–15–17 [1975] which allows county commissions to impose a Special Emergency Ambulance Service Fee. The circuit court concluded that the Special Emergency Ambulance Service Fee Ordinance was constitutional and this appeal followed. We affirm the circuit court.

On 13 May 1991, the Clay County Commission enacted the Special Emergency Ambulance Service Fee Ordinance and imposed a $25 annual fee upon "any bona fide owner or occupant of a living unit within the geographic boundaries of Clay County, West Virginia." The ordinance defines "living unit" as "any personal property and real property owner and taxpayers in any place of residence as classified by the records of the Clay County Assessor which include residential homes, mobile homes, apartments, personal care facilities, nursing homes and correctional facilities." The Special Emergency Ambulance Service Fee was defined as "a specified uniform fee charged to each living unit that ambulance service is made available to and entitles the resident user to necessary 911 emergency transport calls to the nearest medical facility and includes the services set forth in 'Ambulance Rates' below...." Essentially this ordinance assesses a fee on each Clay County household to support the provision of ambulance services.

The appellants' challenge to the service fee ordinance is twofold: (1) the ambulance service fee confounds the equal and uniform property taxation requirement of *W.Va. Const.* art. X, § 1 because the fee is imposed only upon occupants of residential property and not upon mineral owners and other owners of raw land; and, (2) the gross underas-

---

1. The appellants include the Clay County Citizens for Fair Taxation, an unincorporated associ- ation, its officers, board members and other individuals.

sessment of natural resource property in Class III imposes an unfair burden on the homeowners in Class II such that "even though homeowners in Class II are taxed at a lower levy rate they actually paid more in property taxes in 1992 than all Class III owners."

## I

*W.Va.Code* 7–15–17 [1975] states:

A county commission may, by ordinance, impose upon and collect from the users of emergency ambulance service within the county a special service fee, which shall be known as the "special emergency ambulance service fee." The proceeds from the imposition and collection of any such special service fee shall be deposited in a special fund and used only to pay reasonable and necessary expenses actually incurred and the cost of buildings and equipment used in providing emergency ambulance service to residents of the county. Such proceeds may be used to pay for, in whole or in part, the establishment, maintenance and operation of an authority, as provided for in this article.

As used in this section, "users" means any person to whom emergency ambulance service is made available under the provisions of this article.

This Code section authorizes a county commission to impose and collect a special emergency ambulance service fee from the "users of emergency ambulance service." According to *W.Va.Code* 7–15–17 [1975], " 'users' means any person to whom emergency ambulance service is made available under the provisions of this article."

■ In their first challenge, the appellants argue that the ambulance fee is essentially an *ad valorem* tax, which violates the "equal and uniform" taxation requirement of *W.Va. Const.* art X, § 1.[2] However the record shows that the ambulance fee is reasonably related to the service's use and is not imposed as an additional *ad valorem* tax. In *City of Fairmont v. Pitrolo Pontiac–Cadillac, Co.*, 172 W.Va. 505, 308 S.E.2d 527

(1983), *cert. denied,* 466 U.S. 958, 104 S.Ct. 2169, 80 L.Ed.2d 553 (1984), this Court held that fees assessed for fire service by the City of Fairmont constituted an *ad valorem* tax and not a service fee because the city used assessments made by the county assessor for the general property tax to determine the value of the property subject to charge and set the charge in proportion to the property value. Consequently, we held that because the tax rate was based on the value of property and the city was already at maximum authorized levy rate, the tax violated our constitutional levy provisions. *W.Va.Const.* art. X, § 1; *W.Va.Code* 8–13–13 [1971] (authorizing fees for municipal services); *W.Va. Code* 11–8–6d [1949] (maximum levies on each property classification). *Accord Hare v. City of Wheeling,* 171 W.Va. 284, 298 S.E.2d 820 (1982).

In *McCoy v. City of Sistersville,* 120 W.Va. 471, 199 S.E. 260 (1938) this Court held invalid ordinances relating to (1) street lighting; (2) sanitary sewerage; (3) garbage collection; and, (4) street cleaning. The basis of the *McCoy* decision was that such ordinances imposed, in violation of the predecessor of *W.Va.Code* 8–13–13 [1971], a burden upon the owners of property, rather than upon all *users* of the services. However, a fire protection ordinance was upheld in *McCoy* upon the theory that property owners were the primary users of the fire protection service. Nonetheless, with respect to the fire protection ordinance, this Court noted that had the entire value of the real estate and the assessed value of personal property been used as a basis for the fire protection charge, "a serious question would have been raised as to a violation of the limitation amendments...." 120 W.Va. at 478, 199 S.E. at 263.

Then, in *City of Moundsville v. Steele,* 152 W.Va. 465, 164 S.E.2d 430 (1968), this Court upheld an ordinance that imposed a charge for street maintenance upon occupiers of improved property abutting the streets of the city. We concluded that a 25 cents per front

---

**2.** *W.Va.Const.* art X, § 1, begins with the basic and fundamental premise that "taxation shall be

equal and uniform through out the State...."

foot of improved property abutting the street was a valid and reasonable classification for the imposition of a street maintenance user fee.

Consequently, this Court—exactly contrary to the appellants' contention—has consistently held that *user fees* must be imposed in a way reasonably related to use of the service and cannot be imposed in such a way as simply to add to the *ad valorem* property tax. In the case at bar, each "residential living unit" is assessed a $25 fee.

The Clay County Special Emergency Ambulance Service Fee is imposed under a scheme similar to fees imposed under *W.Va. Code* 8–13–13 [1971] which authorizes special charges for municipal services and the imposition "upon the users of such service reasonable rates, fees and charges." *See Nine v. Grant Town*, 190 W.Va. 86, 88, 437 S.E.2d 250, 252 (1993) (noting the purpose of *W.Va. Code* 8–13–13 [1971]); *Ellison v. City of Parkersburg*, 168 W.Va. 468, 473, 284 S.E.2d 903, 906 (1981) (initial billing of the municipal fees to the property's owner is not "inherently unreasonable"). At oral argument, the appellants asserted that the fee scheme is inequitable because a single person living in an apartment pays the same $25 that the head of a ten-child household pays while the owner of a hunting camp that is used only occasionally pays nothing.

We recognize that perfect equity is impossible to achieve in any tax scheme, but perfect equity is not the test. The fee enacted by the Clay County Commission succeeds in imposing upon and collecting "from the users of emergency ambulance service within the county a special service fee...." Obviously, owners of raw land do not use ambulance services; owners of mineral interests do not use ambulance services; and owners of huge farms do not use ambulance services any more frequently than renters of apartments. Given the administrative difficulties of collecting the fee on any basis other than a per household basis, we find that the fee imposed is sufficiently related to the use of the special service for which the fee is imposed that the

scheme survives constitutional challenge. An emergency ambulance service fee that taxes each household regardless of the number of members $25 a year to support ambulance services succeeds in tying the burden of the fee to the usage of the service in a sufficiently reasonable way to satisfy the requirements of *W.Va. Code* 7–15–17 [1975] and it is valid, lawful and enforceable under *W.Va. Code* 7–15–17 [1975].

Thus we find that the Clay County Special Emergency Ambulance Service Fee Ordinance enacted pursuant to the authority of *W.Va. Code* 7–15–17 [1975] does not deny residents of the county due process of law or equal protection of the laws because it fails to tax non-resident landowners who are not regular users of ambulance services.

## II

The appellants also assert that imposing this special service fee upon ordinary residents of Clay County is unconstitutional because the Clay County Commission has systematically underassessed the natural resource property in Clay County. Appellants argue that because *W.Va. Const.* art. X, § 1 requires "equal and uniform taxation" on its face, the gross underassessment of natural resource property in Clay County is a direct violation of this constitutional mandate. One part of the second argument (which admittedly is difficult to follow) is that the collection of a user fee from each residential unit in Clay County violates due process and equal protection because the ordinance does not apply to out-of-county landowners. Thus a small homeowner is required to pay a fee, while a large out-of-state coal owner has no obligation to support this public service.

Our earlier discussion of the constitutional limits of *ad valorem* taxation as set forth in *Pitrolo, supra,* along with our discussion of *McCoy, supra,* should have put to rest any notion that nonusers of a public service can be taxed a fee dedicated to the support of that service.[3] The larger issue that appellants argue, however, is that fees of this type

---

3. *See City of Charleston v. Bd. of Educ. of County of Kanawha*, 158 W.Va. 141, 144, 209 S.E.2d 55, 57 (1974) ("a charge by a municipality for services rendered or for conveniences provided is not a tax. [Citations omitted.]").

would not be necessary if the West Virginia Legislature, the West Virginia Tax Commissioner, the West Virginia Board of Public Works, and the Clay County Assessor—all officials who have something to do with the taxation of public utility and mineral property—would do their jobs and assess mineral interests "in proportion to its value," *W.Va. Const.* art. X, § 1. Were this done, appellants argue, there would be sufficient revenue available to the Clay County Commission that special service fees on ordinary citizens would not be necessary.

The issue of the proper assessment of mineral lands, public utility lands and large tracts of land held for speculation or to harvest timber is constantly debated, and few subjects command as much public attention as taxation. *See e.g.*, Colman McCarthy, *A Fighter in W. Va.*, Wash. Post, Oct. 29, 1994, at A19 (W.Va. Sec. of State Ken Hechler discussing ways "to bring fairness to our tax system"). In the case before us, the appellants invite us to do no less than use the Clay County Special Emergency Ambulance Service Fee as a fulcrum upon which to rest the lever that would completely overhaul (by judicial fiat) the tax system of this State. We have discussed the need for fair taxation of all property in this State on numerous occasions in the last 15 years and see no reason to restate those principles here. *See, e.g., Pauley v. Kelly*, 162 W.Va. 672, 255 S.E.2d 859 (1979); *Tug Valley Recovery Center, Inc. v. Mingo County Comm'n*, 164 W.Va. 94, 261 S.E.2d 165 (1979); *Killen v. Logan County Comm'n*, 170 W.Va. 602, 295 S.E.2d 689 (1982).

Although in a given case we will decide whether a particular parcel of property has been taxed in proportion to its value, we are judges and not legislators, assessors or tax commissioners. Furthermore, we are sure that if we were to accept the appellants' invitation to reassess all of the Class III and IV property in West Virginia—or even just in Clay County—we would do no better job of it than the tax commissioner and the assessors. In addition, we would cease being judges and become publicans.

Accordingly, for the reasons set forth above, the judgment of the Circuit Court of Clay County is affirmed.

Affirmed.

BROTHERTON, C.J., did not participate.

MILLER, Retired Justice, sitting by temporary assignment.