**UNITED STATES of America, Plaintiff,**

v.

**HARFORD COUNTY, Maryland, Defendant.**

**Civ. No. H–82–1464.**

United States District Court, D. Maryland.

Oct. 12, 1983.

Gregory Hrebiniak, Tax Div., Dept. of Justice, Washington, D.C., for plaintiff.

James A. Close, Asst. County Atty., Bel Air, Md., for defendant.

ALEXANDER HARVEY, II, District Judge.

This case presents the question whether an instrumentality of the federal government must, as the owner of property in Harford County, pay a so-called front foot benefit assessment imposed upon it by the County for water and sewer services. The United States contends that this exaction is a tax which cannot be constitutionally imposed upon it by a state or one of its political subdivisions. Harford County argues that a benefit charge rather than a tax is involved and that the County can collect such an exaction from an instrumentality of the federal government as well as from other private users of water and sewer services.

The essential facts have been stipulated. Briefs in support of the parties' positions have been filed and oral argument heard in open court. For the reasons herein stated, this Court concludes that the assessments at issue here are in the nature of a tax and as such cannot be constitutionally imposed on the federal government by a political subdivision of the State of Maryland.

The plaintiff in this case is the United States, and defendant is Harford County, Maryland. In its complaint, the federal government has challenged the constitutional validity of an assessment imposed by the County on property owned by the United States Postal Service and used as a Post Office in Edgewood, Harford County, Maryland. The United States is here seeking the return of monies already paid and also declaratory and injunctive relief.

Since December, 1973, the United States Postal Service has owned a parcel of property in Harford County on Hanson Road. Following the erection of a Post Office at that location, the Postal Service in November, 1978, received notice that "a front foot benefit assessment" had been levied against the property in the amount of $112.50, plus $10.50 interest, for the fiscal year from July 1, 1977 to June 30, 1978. The Post Office was further advised that if the total sum claimed was not paid immediately, all water service to the facility would be cut off. Plaintiff paid the sum claimed under protest. In July, 1978, plaintiff received another notice indicating that the annual assessment for the fiscal year from July 1, 1978 to June 1, 1979 was $112.50. Refusing to pay this amount or the assessments for any of the following years, the United States has filed suit in this Court.

Jurisdiction over this dispute exists pursuant to 28 U.S.C. §§ 1345 and 2201. The narrow issue presented is whether the so-called front foot benefit assessment is a direct tax or is a service charge for a benefit conferred on the property by Harford County.

Between 1960 and 1962, the Metropolitan Commission of Harford County constructed the Edgewood Sanitary Subdistrict for the area where the Post Office is now located. General tax revenues of the County were not used for the Commission's projects. Rather, pursuant to common practice, the Commission sold bonds to finance the Edgewood Subdistrict project.

There are three types of charges which the users of water and sewer services provided by the County must pay. First, there is a service charge based on the amount of water actually consumed. Harford County, Md., Code § 24–18 (Supp.1980). Secondly, there is an area or connection charge, which is a one-time exaction imposed against the property or the applicant. *Id.* § 24–12. Sums collected pursuant to such a charge are used to pay for hooking up properties to the Subdistrict's treatment plants, pumping stations and transmission facilities so that service may be brought into the area where

new construction is located. Thirdly, there is the annual front foot benefit assessment involved in this case. *Id.* §§ 24–24, 24–26. This charge is based on the cost of constructing the project within a particular development and the amounts collected pursuant to this assessment are used to repay bonds issued for the construction of the project. In the case of the Edgewood Sanitary Subdistrict, annual assessments cover a period of thirty years at which time the bonds would be fully repaid.

Defendant here contends that area charges and front foot benefit assessments are essentially the same since they both amortize indebtedness incurred by Harford County for providing water and sewage services of benefit to plaintiff's property. Since plaintiff paid the area charge, defendant argues that it should also be required to pay the front foot benefit assessment.

Since *McCulloch v. Maryland,* 4 Wheat. 316, 4 L.Ed. 579 (1819), it has been settled that the federal government is not subject to any form of taxation by a state or political subdivision in the absence of express Congressional consent. *United States v. County of Allegheny,* 322 U.S. 174, 177, 64 S.Ct. 908, 911, 88 L.Ed. 1209 (1944). The federal government has, however, recognized its obligation to pay state or county charges based on the *quantum* of water and sewer services rendered. 29 Comp.Gen. 120 (1949). Furthermore, the United States also concedes that it must pay one-time connection fees as a cost of construction, levied when a federal building is hooked up with a local sewer system. 39 Comp.Gen. 363 (1959). Pursuant to this accepted practice, plaintiff has paid Harford County the one-time connection charges for the Edgewood Post Office and has continued to pay the charges for the amount of water consumed.

Nevertheless, the United States vigorously opposes annual front foot benefit assessments of the kind at issue in this case. *See, e.g.,* 9 Comp.Gen. 41 (1929). Plaintiff here argues that such exactions amount to a tax on the United States which is prohibited by the Constitution.

Two cases are relied upon by plaintiff in support of its contention that the federal government is not liable for front foot benefit assessments levied by local governments. In *Mullen Benevolent Corp. v. The United States,* 290 U.S. 89, 54 S.Ct. 38, 78 L.Ed. 192 (1933), the Idaho village of American Falls created local improvement districts for the construction of sewers and the laying of sidewalks. The village authorized bond issues to finance the work and levied assessments against lands in the district totaling an amount sufficient for the payment of the principal and interest of the bonds. The United States had acquired certain lands in the district for the construction of a reservoir, and the village sought to recover the amount assessed against this property. The federal government had required the vendors of the property in question to leave part of the purchase price on deposit with the United States pending determination of the government's liability for the assessments. Concluding that assessments made after the conveyances could not affect the title of the United States, the government had caused the monies to be repaid to the vendors. In holding that the bondholder had no right to recover from the United States, the Supreme Court accepted without discussion the proposition that, once the federal government acquired the property, the assessment in question could no longer be levied by the village.

In a more recent case, *Federal Reserve Bank v. Metrocentre Improvement District # 1,* 657 F.2d 183 (8th Cir.1981), *affirmed* 455 U.S. 995, 102 S.Ct. 1625, 71 L.Ed.2d 857 (1982), the city of Little Rock, Arkansas formed the Metrocentre Improvement District No. 1 for its downtown area. The Federal Reserve Bank of St. Louis held title to 10 lots located within the Improvement District. The District assessed the Bank an annual fee of over $12,000 payable from 1977 through 2002 inclusive. In finding that the Federal Reserve Bank was an instrumentality of the federal government, the Eighth Circuit held that this entity enjoyed an immunity from an annual assessment of the sort imposed by the City. The

Supreme Court affirmed without opinion. 455 U.S. 995, 102 S.Ct. 1625, 71 L.Ed.2d 857.

The *Mullen* and *Metrocentre* decisions are dispositive of the dispute involved in this case. Indeed, defendant has not cited a single federal case which supports its contention that the federal government may constitutionally be required to pay a front foot assessment of this sort. Rather, defendant relies on *Manor Real Estate Company v. The Joseph M. Zamoiski Co.*, 251 Md. 120, 246 A.2d 240 (1968) in arguing that the levy at issue here is more closely related to a service charge rather than a tax.

■ However, the Court of Appeals of Maryland did not have before it in *Manor Real Estate Company* the question whether a front foot assessment of the sort involved in this case could constitutionally be levied against the United States. Where a federal right is involved, a federal court is not bound by the characterization given to a state tax by a state court nor relieved from the duty of considering the real nature of the tax and its effect on the federal right asserted. *Carpenter v. Shaw*, 280 U.S. 363, 367–68, 50 S.Ct. 121, 122–123, 74 L.Ed. 478 (1930); *United States v. Allegheny, supra* 322 U.S. at 184, 64 S.Ct. at 914. The facts here indicate that the assessment levied by Harford County against the government Post Office in Edgewood, Maryland is almost identical to that in the *Mullen* case, *supra,* and quite similar to the one in *Metrocentre, supra.* These cases establish that once real property is acquired by the United States, it becomes immune from any special or benefit assessment levied by a state or political subdivision. In this case, the first benefit assessment was levied in 1977, four years after the United States became the owner of the parcel in question. As such, it is an illegal tax which the federal government is not constitutionally obligated to pay.

In addition to the authorities which support this Court's conclusion, there are overriding policy considerations. When the Edgewood Post Office refused to pay the first benefit assessment, defendant threatened to cut off its water supply. Had this occurred, an essential government function would have been adversely affected. Moreover, the non-payment of such an assessment creates a lien against the property. Harford County, Md., Code § 24–20 (Supp. 1980). Harford County would, if the exaction is a legal one, have been empowered to sell the Post Office to raise the funds necessary to extinguish the debt. The result would be that a local county government would be empowered to deny essential services and in effect close a federal facility. Considerations of this sort prompted the Supreme Court in 1819 to first enunciate the principle of federal immunity from state taxation. *McCulloch, supra.*

For the reasons stated, plaintiff is entitled to the relief it is seeking in this case. Counsel are directed to consult and submit to the Court within 15 days an appropriate Order granting judgment in favor of the plaintiff.