**UNITED STATES of America, Plaintiff–Appellant,**

**v.**

**CITY OF HUNTINGTON, WEST VIRGINIA, Defendant–Appellee.**

**No. 92–2074.**

United States Court of Appeals, Fourth Circuit.

Argued: March 2, 1993.

Decided: June 10, 1993.

Amended by Order Filed July 12, 1993.

**72**

Edward T. Perelmuter, Tax Div., .U.S. Dept. of Justice, Washington, DC, argued (James A. Bruton, Acting Asst. Atty. Gen., Gary R. Allen, David English Carmack, Tax Div., U.S. Dept. of Justice, Washington, DC; Michael W. Carey, U.S. Atty., Charleston, WV, on brief), for plaintiff-appellant.

Frederick G. Staker, III, City Atty., City of Huntington, Huntington, WV, argued, for defendant-appellee.

Before HALL and LUTTIG, Circuit Judges, and HOWARD, United States · District Judge for the Eastern District of North Carolina, sitting by designation.

## OPINION

**K.K. HALL, Circuit Judge:**

The United States appeals an order declaring that federal agencies that own property in the City of Huntington, West Virginia ("City") are liable for the payment of a municipal service fee imposed by the City. We hold that the service fee is a tax from which the United States is immune, and, accordingly, we reverse.

### I.

West Virginia Code § 8–13–13 authorizes any city that "furnishes any essential or special municipal service, including, but not limited to, police and fire protection ... to impose upon the users of such service reasonable rates, fees and charges...." In 1985, the City enacted an ordinance that imposed a "fire service fee" against owners of residential and commercial buildings. A flood protection fee was added in 1987, and, in 1990, these two fees were combined into a single "municipal service fee." Infrastructure improvements were added in 1991 as another purpose for which the fees could be used. From its inception in 1985, the fee has been assessed on the basis of square footage of the buildings in the City.[1] Civil penalties are available for delinquent accounts.

The City assessed the fee against federal agencies owning property in Huntington, including the General Services Administration ("GSA") and the United States Postal Service ("USPS").[2] These two agencies refused to pay the fee, and the City assessed penalties and instituted collection proceedings in state court. ˙ The United States then filed a complaint in federal court asking that the City be enjoined from assessing or trying to collect the tax against the GSA and USPS.[3] The

---

1. The square-footage method of assessment was a response to state constitutional limitations on *ad valorem* taxation. *See Hare v. City of Wheeling*, 171 W.Va. 284, 298 S.E.2d 820 (1982); *City of Fairmont v. Pitrolo Pontiac–Cadillac Co.*, 172 W.Va. 505, 308 S.E.2d 527 (1983), *cert. denied*, 466 U.S. 958, 104 S.Ct. 2169, 80 L.Ed.2d 553 (1984).

2. Since 1985, § 773.04(c) of the City code has provided as follows: "*Governmental Buildings and Structures*. The City is hereby authorized to negotiate with the County, State and Federal Governments in order to fix an agreement with

them so that the City may provide fire protection service to buildings and structures owned by these governments and located within the City." The record does not disclose whether any attempt to negotiate with the agencies was ever undertaken.

3. There are other federal agencies in the City that own property, but the order mentions only GSA and USPS. According to the appellant's brief, these other federal agencies are not parties to this litigation. Appellant's Brief at 10, n. 14.

federal agencies also requested that the court declare that they were immune from the fees.

On cross-motions for summary judgment, the district court ruled that GSA and USPS must pay the fees, but that they were not liable for penalties or interest, 793 F.Supp. 1370. The United States appeals; the City does not cross-appeal the injunction against the collection of penalties and interest.

## II

■ The general principle that states cannot tax the United States derives from Chief Justice Marshall's opinion in *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819). Although the immunity of the federal government and its instrumentalities has been the source of often conflicting decisions, "[t]he one constant ... is simple enough to express: a State may not, consistent with the Supremacy Clause, U.S. Const., Art. VI, cl. 2, lay a tax 'directly upon the United States'.... [T]he Court has never questioned the propriety of absolute immunity from state taxation." *United States v. New Mexico*, 455 U.S. 720, 733, 102 S.Ct. 1373, 1382, 71 L.Ed.2d 580 (1982) (quoting *Mayo v. United States*, 319 U.S. 441, 447, 63 S.Ct. 1137, 1140, 87 L.Ed. 1504 (1943)). *If* the service fee is a tax, then immunity is clear.

■ Although the Supreme Court has never established a specific standard for deter-

mining when a particular assessment is a tax, the Court has consistently adhered to the general rule that what must be considered is "the real nature of the tax and its effect upon the federal right asserted." *United States v. Allegheny County*, 322 U.S. 174, 184, 64 S.Ct. 908, 914, 88 L.Ed. 1209 (1944) (quoting *Carpenter v. Shaw*, 280 U.S. 363, 367–68, 50 S.Ct. 121, 123, 74 L.Ed. 478 (1930)). The proper analysis to arrive at the real nature of the assessment is to examine "all the facts and circumstances ... and assess them on the basis of economic realities...." *United States v. City of Columbia, Mo.*, 914 F.2d 151, 154 (8th Cir.1990).[4] Under this analysis, we conclude that the service fee imposed by the City is a tax in the most classic sense of the term.[5]

■ The United States must pay reasonable user fees. For instance, charges for services from city-owned utilities are clearly fees for which the federal government would be liable to the same extent as any other customer. *See United States v. Harford Co., Md.*, 572 F.Supp. 239, 241 (D.Md.1983) ("The federal government has ... recognized its obligation to pay state or county charges based on the *quantum* of water or sewer services rendered.") (emphasis in original). But not every assessment tied to some state-provided benefit is a user fee.

Fire and flood protection and street maintenance are core government services. *See Mullen Benev. Corp. v. United States*, 290 U.S. 89, 54 S.Ct. 38, 78 L.Ed. 192 (1933) (United States immune from liability for

---

**4.** For the purpose of determining claim priority in the context of bankruptcy, the courts have established the following elements of a tax: "(a) An involuntary pecuniary burden, regardless of name, laid upon individuals or property; (b) Imposed by, or under authority of the legislature; (c) for public purposes, including the purpose of defraying expenses of government of undertakings authorized by it; and (d) Under the police or taxing power of the state." *In Re Lorber Industries*, 675 F.2d 1062, 1066 (9th Cir.1982). The "user fee" at issue in the instant case clearly qualifies as a tax under this definition.

**5.** The district court reached its result by three different tests, including the one we have chosen. The first test asked whether the fee is an enforced contribution to provide for the support of government. *See United States v. Maryland*, 471 F.Supp. 1030, 1036 (D.Md.1979). It begs the question to conclude, as did the district court, that the service fee is not a tax because it is

intended to recoup funds expended for fire and flood protection.

The third test derives from cases dealing with federal taxation of state governments. *See United States v. Maine*, 524 F.Supp. 1056 (D.Me. 1981) (applying a 3–part test: (1) is the charge imposed in a nondiscriminatory manner; (2) is the charge a fair approximation of the benefits received; and (3) is the charge structured to produce revenues that will not exceed the total costs to the government of the benefits to be supplied). Inasmuch as "[t]he states' immunity from federal taxation is more limited than the federal government's immunity from state taxation, and is based on a different constitutional source," (*United States v. City of Columbia, Mo.*, 914 F.2d 151, 153–54 (8th Cir.1990)), we are of the opinion that the *United States v. Maine* test is inapplicable here.

"taxes in the nature of reassessments for sewers and sidewalks."); *see also Federal Reserve Bank v. Metro Center Improvement District # 1,* 657 F.2d 183 (8th Cir.1981), *aff'd,* 455 U.S. 995, 102 S.Ct. 1625, 71 L.Ed.2d 857 (1982) (federal immunity from taxation includes immunity from special assessment on real estate owned by federal instrumentality); *United States v. Harford Co., Md.,* 572 F.Supp. 239 (D.Md.1983) (front-foot assessment for the financing of county water and sewer construction projects are taxes from which the federal government was immune). Under the theory advanced by the City, virtually all of what now are considered "taxes" could be transmuted into "user fees" by the simple expedient of dividing what are generally accepted as taxes into constituent parts, e.g., a "police fee."

■ User fees are payments given in return for a government-provided benefit. Taxes, on the other hand, are "enforced contribution[s] for the support of government." *United States v. La Franca,* 282 U.S. 568, 572, 51 S.Ct. 278, 280, 75 L.Ed. 551 (1931). Liability for the "user fee" charged by the City arises from GSA's and USPS's status as property owners and not from their use of a City service.[6] *See Michelin Tire Corp. v. Wages,* 423 U.S. 276, 287, 96 S.Ct. 535, 541, 46 L.Ed.2d 495 (1976) ("[Ad valorem] property taxes are taxes by which a State apportions the cost of such services as police and fire protection among the beneficiaries according to their respective wealth ...").

We are unable to discern any relevant difference between the square-footage method of assessment and the ad valorem method. The service fee is a thinly disguised tax, and, as such, the USPS and GSA are immune from liability for it.

We reverse the judgment of the district court, and we remand with instructions to enter judgment for the United States.

REVERSED AND REMANDED WITH INSTRUCTIONS.

---

6. Indeed, the federal government has waived immunity to extent that it actually receives fire protection services. The City may file a claim against the United States for reimbursement of direct costs incurred putting out a fire on federally-owned property. *See* 15 U.S.C. § 2210(a).