473 S.E.2d 743

**The CITY OF HUNTINGTON, a West Virginia Municipal Corporation, Plaintiff Below, Appellee,**

v.

**John A. BACON and Carole A. Bacon, Defendants Below, Appellants.**

**The CITY OF HUNTINGTON, a West Virginia Municipal Corporation, Plaintiff Below,**

v.

**The CABELL COUNTY BOARD OF EDUCATION, a West Virginia Public Corporation, Defendant Below.**

Nos. 23067, 23070.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 23, 1996.

Decided June 14, 1996.

---

J. William St. Clair, St. Clair & Levine, Huntington, for Appellants.

Jendonnae L. Houdyschell, Assistant City Attorney, Huntington, for Appellee.

James Allan Colburn, Baer, Colburn & Morris, L.C., Huntington, for Defendant.

Jendonnae L. Houdyschell, Assistant City Attorney, Huntington, for Plaintiff.

Paul T. Boos, Kevin A. Stryker, Office of City Solicitor, Wheeling, for Amicus Curiae City of Wheeling.

John Preston Bailey, Harry L. Buch, Christopher Paull Riley, Bailey, Riley, Buch & Harman, L.C., Paul C. Camilletti, Camil-

letti, Sacco & Pizzuti, Wheeling, for Amicus Curiae Wheeling College, Inc. and Rev. Bernard W. Schmitt.

James W. Withrow, Vaughan & Withrow, Charleston, for Amicus Curiae West Virginia Municipal League, Inc.

McHUGH, Chief Justice.

The two cases before us were consolidated for argument and opinion. In the first case, the appellants, John Bacon, Carole Bacon, and other owners of buildings in the City of Huntington (hereinafter "the Bacons") appeal the April 25, 1995 order of the Circuit Court of Cabell County which granted summary judgment for the City of Huntington. In the second case, the Circuit Court of Cabell County certified a question to this Court from a declaratory judgment action in which the City of Huntington (hereinafter "City") and the Cabell County Board of Education (hereinafter "Board of Education") are parties.[1]

Both cases involve the resolution of the following issue: Whether the City's municipal service fee imposed upon owners of buildings at an annual rate plus a percentage based upon the square footage of space contained in each structure on the lot in order to defray the cost of fire and flood protection services is a fee or tax. For reasons explained below, we find the municipal service fee to be a fee and not a tax.

I.

In order to facilitate an understanding of how the two cases arose, a history of the municipal service fee in Huntington needs to be discussed. Furthermore, the procedural history of each case should be noted.

A.

*History of the municipal service fee*

In 1990 the City passed an ordinance imposing a municipal service fee in order to defray the cost of providing fire and flood protection services:

> On or after July 1, 1990, there is hereby imposed upon all users of Municipal services a municipal service fee for each lot or parcel of land containing any building or structure owned by each user. The fee shall be imposed at an annual rate of seventy dollars ($70.00) per lot plus $0.0375 per square foot of floor space contained in each building or structure existing on each such lot.[2]

Ordinance § 773.03 (footnote added). The term "user" in the above ordinance is defined in the following manner:

> For purposes of this article, 'user of municipal services' and 'user' refers to any person, firm, corporation or governmental entity of any kind owning any building or structure, whether residential, commercial, governmental or otherwise, within the limits of the City which benefits from fire and/or flood protection services provided by the City.

Ordinance § 773.02.

In 1991 the City amended ordinance § 773.03 by increasing the rate to $80.00 per lot and $0.0575 per square foot. Additionally, that amendment allocated $250,000.00 of the municipal service fee collected between 1991 and 1994 to the improvement of streets and municipal infrastructure. According to the City, since 1994, the municipal service fee is no longer being used to improve streets and municipal infrastructure.

B.

*The Bacons*

The City filed suit against the Bacons in order to collect the municipal service fee assessed against them. The Bacons maintained they were not required to pay the municipal service fee because the fee was a tax which violated the Tax Limitation Amendment found in *W. Va. Const.* Art. X,

---

1. The West Virginia Municipal League, Inc., Wheeling College, Inc., Rev. Bernard W. Schmitt, and the City of Wheeling submitted *amicus curiae* briefs.

2. It is not necessary for this Court to discuss in any detail the difference between the imposition of a flat rate charge upon the owner of a building and a charge based upon the square footage of a building.

§ 1.[3] The Bacons relied, *inter alia,* upon *United States v. City of Huntington,* 999 F.2d 71 (4th Cir.1993), *cert. denied,* 510 U.S. 1109, 114 S.Ct. 1048, 127 L.Ed.2d 371 (1994), which held the municipal service fee was a tax which an agency of the federal government was not obligated to pay pursuant to the Supremacy Clause of the Constitution of the United States.[4] More specifically, the Bacons argued that the *City of Huntington* case collaterally estops the City from raising the issue of whether the municipal service fee is a tax or fee in state court.

The circuit court disagreed and concluded that the municipal service fee was a user fee which the City properly imposed upon the Bacons pursuant to *W. Va.Code,* 8–13–13 [1971]. Thus, the circuit court granted the motion for summary judgment by the City thereby ordering the Bacons to pay the municipal service fee.

The Bacons have filed the appeal now before us asserting that the application of the doctrine of collateral estoppel mandates the circuit court to uphold the Fourth Circuit's determination that the municipal service fee is a tax in violation of the Tax Limitation Amendment of our State Constitution. In the alternative, the Bacons maintain that the municipal service fee is a tax pursuant to state law which also violates the Tax Limitation Amendment. Lastly, the Bacons assert that even if the municipal service fee is a fee, it is unreasonably applied to them.

**3.** The Tax Limitation Amendment found in *W. Va. Const.* Art. X, § 1 imposes limits beyond which property may not be subjected to taxation.

**4.** The Supremacy Clause is found in Article VI of the *Constitution of the United States,* which states, in relevant part:

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, and any thing in the Constitution or Laws of any State to the Contrary notwithstanding.

The principle that states cannot tax the United States was derived from *McCulloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819). More recently it has been explained that " 'a

## C.

### *Cabell County Board of Education*

On February 16, 1989, the City brought a declaratory judgment action pursuant to *W.Va.Code,* 55–13–1 [1941] in order to seek a declaration of its rights to recover certain municipal fees assessed against the Board of Education. On June 22, 1995, the Circuit Court of Cabell County, *sua sponte,* issued an order certifying the following question to this Court: "May the City of Huntington continue to impose its Municipal Service Fee for Fire and Flood protection upon the Board of Education of Cabell County, West Virginia in light of [*United States v. City of Huntington,* 999 F.2d 71 (4th Cir.1993) ]?"

The circuit court answered the question in the affirmative, holding that the *City of Huntington* case from the Fourth Circuit Court of Appeals did not bar the City from seeking the municipal service fee from the Board of Education. Implicitly, the circuit court determined the municipal service fee was a fee and not a tax. Thus, the circuit court concluded the fee could be assessed against the Cabell County Board of Education.

The Board of Education, in the action now before us, maintains that the municipal service fee is a tax (either because the collateral estoppel doctrine mandates the circuit court to apply the Fourth Circuit's holding or because of state law) which it is exempt from paying pursuant to *W. Va.Code,* 11–3–9 [1990].[5] The Board of Education also main-

State may not, consistent with the Supremacy Clause, U.S. Const., Art. VI, cl. 2 lay a tax "directly upon the United States".... [T]he Court has never questioned the propriety of absolute immunity from state taxation.' " *City of Huntington,* 999 F.2d at 73 (citations omitted).

**5.** *W. Va.Code,* 11–3–9 [1990] concerns property which is exempt from taxation. More specifically, *W. Va.Code,* 11–3–9 [1990] states, in relevant part, that all property which "belong[s] exclusively to any county, district, city, village or town in this state, and used for public purposes ..." is exempt from taxation. *W. Va.Code,* 11–3–9 [1990] also exempts from taxation any property "belonging to, or held in trust for ... free schools, if used for educational, literary or scientific purposes[.]" *See also W. Va. Const.* Art. X, § 1 (Legislature may exempt all property used for educational purposes from taxation).

tains that even if the municipal service fee is found to be a fee, there is no legislative enactment obligating it to pay such a fee.

## II.

◼ At the outset, we note that "[a] circuit court's entry of summary judgment is reviewed de novo." Syllabus point 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). *See also* syl. pt. 1, *Jones v. Wesbanco Bank Parkersburg*, 194 W.Va. 381, 460 S.E.2d 627 (1995) and syllabus point 1, *State v. Morgan Stanley Co., Inc.*, 194 W.Va. 163, 459 S.E.2d 906 (1995). Additionally, we have stated that "we retain some flexibility in determining how and to what extent ... [a certified question from a circuit court to us] will be answered." *City of Fairmont v. Retail, Wholesale, & Dept. Store Union*, 166 W.Va. 1, 3–4, 283 S.E.2d 589, 590 (1980), *citing West Virginia Water Service Co. v. Cunningham*, 143 W.Va. 1, 98 S.E.2d 891 (1957). *See also* syl. pt. 3, *Kincaid v. Mangum*, 189 W.Va. 404, 432 S.E.2d 74 (1993).

Although the Bacons and Board of Education raise different arguments, there essentially are three common issues which must be resolved in these consolidated cases: (1) Does collateral estoppel apply; (2) Is the municipal service fee a fee or tax pursuant to state law; and (3) Does the municipal service fee reasonably serve the purpose for which it was enacted?

### A.

### *Collateral Estoppel*

◼ As we have previously discussed, the Fourth Circuit in *City of Huntington* determined that the municipal service fee presently at issue to be a tax. The first issue on appeal is whether the Fourth Circuit's holding collaterally estops the City from arguing that the municipal service fee is a fee.

◼ We begin our analysis with a brief discussion of the collateral estoppel doctrine. The purpose of the collateral estoppel doctrine is "to foreclose relitigation of issues in a second suit which have actually been litigated in the earlier suit even though there may be

a difference in the cause of action between the parties of the first and second suit." Syl. pt. 2, in part, *Conley v. Spillers*, 171 W.Va. 584, 301 S.E.2d 216 (1983). We have outlined four conditions which must be met before collateral estoppel will bar a claim in syllabus point 1 of *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995):

> Collateral estoppel will bar a claim if four conditions are met: (1) *The issue previously decided is identical to the one presented in the action in question;* (2) there is a final adjudication on the merits of the prior action; (3) the party against whom the doctrine is invoked was a party or in privity with a party to a prior action; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

(emphasis added). *See also* syl. pt. 6, *Conley, supra.* In the case before us, the focus is on the first condition of collateral estoppel. We have stated that an analysis of the first condition involves not only a determination of whether the facts are similar, but also a determination of whether the legal standards and procedures used to assess the facts are similar. *Miller*, 194 W.Va. at 10, 459 S.E.2d at 121.

With this in mind we will examine the history of the *City of Huntington* case in order to determine whether the collateral estoppel doctrine is applicable. The case arose in the Fourth Circuit Court of Appeals after the United States filed a complaint in the United States District Court seeking an injunction in order to prohibit the City from imposing the municipal service fee on the United States Postal Service and the United States General Services Administration. *United States v. City of Huntington*, 793 F.Supp. 1370 (S.D.W.Va.1992). The United States sought a declaration that the assessed fee was a tax which it was not obligated to pay pursuant to the Supremacy Clause of the Constitution of the United States. *Id.* The district court concluded that the City of Huntington's municipal service fee was a user fee which the federal government agencies had to pay.[6]

6. In arriving at its conclusion, the United States

District Court acknowledged that "[s]tates are

The United States Court of Appeals of the Fourth Circuit reversed the United States District Court's decision. *United States v. City of Huntington,* 999 F.2d 71 (4th Cir. 1993). In so ruling, the Court of Appeals noted the following definitions of fee and tax: "User fees are payments given in return for a government-provided benefit. Taxes, on the other hand, are 'enforced contribution[s] for the support of government.'" *Id.* at 74 (citations omitted). The court went on to state "[l]iability for the 'user fee' charged by the City arises from ... [the United State's] status as [a] property owner[ ] and not from ... [its] use of a City service." *Id.* at 74 (footnote omitted). The Court of Appeals concluded there was no "relevant difference between the square-footage method of assessment [which is how the municipal service fee is assessed] and the ad valorem method [which is a tax based upon the value of property]." *Id.* at 74.

The Bacons and the Board of Education maintain that the issue before the Fourth Circuit regarding whether the municipal service fee is a tax or fee is exactly the same issue before the circuit court in each of their respective cases. Moreover, the Bacons and the Board of Education assert that the legal principles have not changed since the Fourth Circuit addressed the issue.

Conversely, the City argues that the Fourth Circuit decided a different issue. More specifically, the City maintains that the issue before the Fourth Circuit was whether the municipal service fee was a tax which the City could not impose on a federal entity pursuant to the Supremacy Clause of the Constitution of the United States. The City maintains that because neither the Bacons nor the Board of Education is entitled to any immunities under the Constitution of the United States, the Fourth Circuit's holding is not applicable to them. We agree.

The Supreme Court of the United States has made clear that the states are free to chose their own fiscal policies: "The State is left to choose its own methods of taxation and its form and manner of enforcing the payment of the public revenues, subject, so far as the Federal power is concerned, to the restricting regulations of the Constitution of the United States." *Kentucky Union Co. v. Kentucky,* 219 U.S. 140, 151, 31 S.Ct. 171, 176, 55 L.Ed. 137, 154 (1911). *See also Wisconsin v. J.C. Penney Co.,* 311 U.S. 435, 444, 61 S.Ct. 246, 249–50, 85 L.Ed. 267, 270 (1940) ("A state is free to pursue its own fiscal policies, unembarrassed by the Constitution, if by the practical operation of a tax the state has exerted its power in relation to opportunities which it has given, to protection which it has afforded, to benefits which it has conferred by the fact of being an orderly, civilized society.").

■ The only limitations the Supreme Court of the United States may impose upon a state's power to determine its own fiscal policies are those expressed in the Constitution of the United States. *Kentucky Union Co., supra.* One such limitation expressed in the Constitution of the United States is that the federal government is not subject to any taxation by a state or political subdivision unless explicitly authorized by Congress. *See McCulloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819) and *United States v. Harford County,* 572 F.Supp. 239 (Dist.Ct.Md.1983). Therefore, where a federal entity is involved, the federal courts may determine whether a particular funding mechanism employed by a state or its political subdivision is, in fact, a tax: "Where a federal right is involved, a federal court is not bound by the characterization given to a state tax by a state court nor relieved from the duty of considering the real nature of the tax and its effect on the federal right asserted." *Harford County,* 572 F.Supp. at 242

without authority to tax the United States[,]" but noted the United States "must pay reasonable users fees." *Id.* at 1371. When analyzing the specific nature of the exaction imposed by the City, the district court stated that the "fire and flood fees bear a reasonable relationship to the consuming public[ ] [because] [t]hose who own buildings are the users of the fire and flood protection services." *Id.* at 1371. Thus, the

district court found the nature of the exaction to be more like a user fee than a tax. Additionally, the court noted because the revenue from the municipal service fee was inadequate to cover the costs of providing those services, the municipal service fee was not an "enforced contribution to provide for the support of Government." *Id.* at 1372 (citation omitted).

(*citing Carpenter v. Shaw,* 280 U.S. 363, 367–68, 50 S.Ct. 121, 122–23, 74 L.Ed. 478, 482 (1930); *United States v. Allegheny,* 322 U.S. 174, 184, 64 S.Ct. 908, 914, 88 L.Ed. 1209, 1217 (1944)).

█ It follows, therefore, that a state is not bound by a federal court's characterization of a state tax or fee when a federal right is not involved. After all, as we have previously stated, states are free to determine their own fiscal policy as long as the fiscal policy does not violate the Constitution of the United States. *Kentucky Union Co., supra.*

Accordingly, the circuit court properly determined that the Bacons and the Board of Education could not assert collateral estoppel in the cases before us, as the issue resolved by the Fourth Circuit in *City of Huntington, supra,* clearly differs from the issues now pending. *See* syl. pt. 1, *Miller, supra.* Therefore, we must address the issue of whether the City's municipal service fee is a tax or a fee pursuant to state law.[7]

### B.

*Municipal service fee is a user fee*

█ The City derives all of its power as well as its existence from the legislature:

'Municipalities have no inherent power with regard to the exercise of the functions of their government. Such power depends solely upon grants of power by Acts of the Legislature, and the Legislature may at any time modify, change or withdraw any power so granted by general law in conformance with the provisions of the Constitution, Article VI, Section 39(a).'[8] Point 2, Syllabus, *State ex rel. Alexander v. The County Court of Kanawha County, et al.,* 147 W.Va. 693[, 130 S.E.2d 200 (1963)].

Syl. pt. 1, *State ex rel. Plymale v. City of Huntington,* 147 W.Va. 728, 131 S.E.2d 160 (1963) (footnote added). *See also* syl. pt. 1, *Toler v. City of Huntington,* 153 W.Va. 313, 168 S.E.2d 551 (1969); syl. pt. 1, *Chesapeake & Potomac Telephone Co. v. City of Morgantown,* 144 W.Va. 149, 107 S.E.2d 489 (1959). *Cf.* syllabus point 1, in relevant part, *Hukle v. City of Huntington,* 134 W.Va. 249, 58 S.E.2d 780 (1950) (Because a municipality has no inherent power to levy taxes, the municipality may only do so pursuant to the authority granted to it by the legislature). Therefore, the City only has the authority to impose the fees or taxes which are authorized by the legislature. *Id. See also W. Va. Const.* Art. X, § 9.[9] The legislature specifically authorized municipalities "to impose by ordinance upon the users of ['essential or special municipal service, including, but not limited to, police and fire protection ... and any other similar matter'] *reasonable rates, fees and charges* to be collected in the manner speci-

---

7. This issue is difficult, and one we address with reservations. The Bacons and the Board of Education are concerned about the label of the municipal service fee for different reasons. As previously noted, the Bacons argue that the municipal service fee is a tax which violates the Tax Limitation Amendment of our State Constitution. The Board of Education, on the other hand, argues that the municipal service fee is a tax which it is not obligated to pay pursuant to *W.Va.Code,* 11–3–9 [1991]. *See* n. 5, *supra.* However, in that both arguments involve the determination of whether the municipal service fee is a tax or fee, we will focus on that issue.

8. *W. Va. Const.* Art. VI, § 39(a) provides, in pertinent part, that

[t]he legislature shall provide by general laws for the incorporation and government of cities, towns and villages[,. and] [s]uch general laws shall restrict the powers of such cities, towns and villages to borrow money and contract debts, and shall limit the rate of taxes for municipal purposes, in accordance with sec-

tion one, article ten of the Constitution of the State of West Virginia. Under such general laws, the electors of each municipal corporation, wherein the population exceeds two thousand, shall have power and authority to frame, adopt and amend the charter of such corporation, or to amend an existing charter thereof, and through its legally constituted authority, may pass all laws and ordinances relating to its municipal affairs: Provided, that any such charter or amendment thereto, and any such law or ordinance so adopted, shall be invalid and void if inconsistent or in conflict with this Constitution or the general laws of the State then in effect, or thereafter, from time to time enacted.

9. *W. Va. Const.* Art. X, § 9 states: "The legislature may, by law, authorize the corporate authorities of cities, towns and villages, for corporate purposes, to assess and collect taxes; but such taxes shall be uniform, with respect to persons and property within the jurisdiction of the authority imposing the same."

fied in the ordinance[.]" *W. Va.Code*, 8–13–13 [1971], in relevant part (emphasis added). It was pursuant to the authority conferred upon it by *W. Va.Code*, 8–13–13 [1971] that the City imposed its municipal service fee for fire and flood protection services.

■ Though the above language employed by the legislature in *W. Va.Code*, 8–13–13 [1971] suggests that the legislature intended the charges imposed on the users of essential or special municipal services to be user fees rather than taxes, this Court has held "[t]he character of a tax is determined not by its label but by analyzing its *operation and effect.*" Syl. pt. 2, *City of Fairmont v. Pitrolo Pontiac–Cadillac*, 172 W.Va. 505, 308 S.E.2d 527 (1983), *cert. denied*, 466 U.S. 958, 104 S.Ct. 2169, 80 L.Ed.2d 553 (1984) (emphasis added). *See also* syl. pt. 2, *Solid Waste Authority v. Division of Natural Resources*, 195 W.Va. 1, 462 S.E.2d 349 (1995) and *Hukle*, 134 W.Va. at 255, 58 S.E.2d at 783 ("It is well-nigh universal principle that courts will determine and classify taxation on the basis of realities, rather than what the tax is called in the taxing statute or ordinance." (citation omitted)). However, "it is difficult to categorize an assessment as a fee or a tax because the courts have not adopted universal definitions of these terms." *Solid Waste Authority*, 195 W.Va. at 5, 462 S.E.2d at 353.

■ Nevertheless, in recognition of the legislature's constitutional power to determine this State's fiscal policy, this Court has accorded it and municipalities wide latitude in how they choose to fund municipal services, such as those for fire and flood protection. *See W. Va. Const.* Art. VI, § 51; Art. X, § 3; and Art. X, § 5. The legislature's power to determine this State's fiscal policy is limited only by the Constitution. *See also* syl. pt. 3, *State ex rel. Lambert v. County Comm'n*, 192 W.Va. 448, 452 S.E.2d 906 (1994) (This Court must use every reasonable construction of a legislative enactment in order to sustain its constitutionality).

Thus, the role of this Court is to examine the "operation and effect" of a charge imposed for a service by a municipality pursuant to the legislature's authorization in *W. Va.Code*, 8–13–13 [1971] to determine whether the charge violates a constitutional provision. *See* syl. pt. 2, *City of Fairmont, supra.* We are less concerned with the label of the charge and more concerned with upholding our Constitution.

■ Though our case law reveals a somewhat convoluted history in the area of taxes and fees, this Court has generally operated on the premise that charges for services rendered by a municipality are user fees and not taxes. *See City of Charleston v. Board of Education*, 158 W.Va. 141, 145, 209 S.E.2d 55, 57 (1974) (the charge for fire protection is a fee and not a tax); *City of Moundsville v. Steele*, 152 W.Va. 465, 164 S.E.2d 430 (1968) (charge of $0.25 per front foot for street improvement is a fee and not a tax); and *Duling Bros. Co. v. City of Huntington*, 120 W.Va. 85, 89–90, 196 S.E. 552, 554–55 (1938) (charges for a flood control program are not subject to ordinary taxing regulations). This premise is based on the following definitions of tax and fee: "[T]he primary purpose of a tax is to obtain revenue for the government, while *the primary purpose of a fee is to cover the expense of providing a service* or of regulation and supervision of certain activities." *River Falls v. St. Bridget's Catholic Church*, 182 Wis.2d 436, 513 N.W.2d 673, 675 (App.1994) (*citing State v. Jackman*, 60 Wis.2d 700, 211 N.W.2d 480, 485 (1973) and emphasis added).

■ On the other hand, where the "operation and effect" of a service charge appears to impose a tax, then this Court examines the service charge more closely. For example, in *City of Fairmont v. Pitrolo Pontiac–Cadillac*, 172 W.Va. 505, 308 S.E.2d 527 (1983) this Court found the police service charge imposed by the City of Fairmont to be an *ad valorem* tax which violated the Tax Limitation Amendment found in *W. Va. Const.* Art. X, § 1 rather than a user fee. We determined that the "operation and effect" of the police service charge was the same as the "operation and effect" of an *ad valorem tax* because the police service fee, like an *ad valorem tax*, was imposed according to the value of the property. *Id.* at syl. pts. 1 and 3. *See also Hare v. City of Wheeling*, 171 W.Va. 284, 298 S.E.2d 820 (1982) (A police

service charge imposed upon owners of property by the City of Wheeling based upon the value of property as determined by the books of the county assessor is, in fact, an *ad valorem* tax which violates *W. Va. Const.* Art. X, § 1 rather than a user fee).

■ Conversely, if the "operation and effect" of the service charge imposed by a municipality does not give the appearance of being a tax, and if an ordinance enacted pursuant to *W. Va.Code,* 8–13–13 [1971] "reasonably serves the purpose for which it was enacted," then this Court will defer to the municipality's wisdom in imposing the service charge. *Ellison v. City of Parkersburg,* 168 W.Va. 468, 472, 284 S.E.2d 903, 906 (1981).

■ In the case before us, the Bacons and the Board of Education maintain the City's municipal service fee is, in fact, an *ad valorem* tax because the rate of the fee is based upon the square footage of space contained in each structure. In syllabus point 3 of *City of Fairmont, supra,* we held: "The essential characteristic of an ad valorem tax, as its name suggests, is that the tax is levied according to the value of the property. Also, assessment on a regular basis is a common characteristic." Although the City's municipal service fee is assessed on a regular basis, it is not based upon the value of the property. Under the language of the municipal service fee ordinance, a building worth several million dollars which has the same square footage as a building worth a fraction of that would be assessed identical municipal service fees. By imposing a charge based upon a structure's square footage, the City creatively avoided the results in *City of Fairmont.* However, the square footage assessment does not make the municipal service fee, in fact, an *ad valorem* tax.

The Bacons and the Board of Education also argue that the municipal service fee falls within the traditional definition of a property tax: " 'The consensus of opinion appears to be that a property tax is a charge on the owner of property by reason of his ownership alone without regard to any use that might be made of it, *Bromley v. McCaughn,* 280 U.S. 124, 136, 50 S.Ct. 46 [, 47], 74 L.Ed. 226 (1929)[.]' " *City of Fairmont,* 172 W.Va. at 509, 308 S.E.2d at 531 (*quoting Weaver v.*

*Prince George's County,* 281 Md. 349, 379 A.2d 399, 403–04 (1977) and citations omitted). The Bacons and Board of Education focus on the above definition in isolation which can often be misleading. For example, in this case the City imposed its municipal service fee on the primary users of its flood and fire protection services. These primary users happen to be property owners. Thus, the City did not impose the municipal service fee on the owners of property by reason of their ownership alone. Instead, the fee is imposed upon property owners by reason of their *use* of fire and flood protection services. Therefore, the municipal service fee is not a property tax in this instance.

■ Lastly, the Bacons and the Board of Education argue that because the proceeds from the collection of the municipal service fee are not used exclusively to pay for fire and flood protection services, the municipal service fee is a tax. We agree that the proceeds from the collection of the municipal service fee must be used exclusively to pay for fire and flood protection services. As previously noted, in the past, the City earmarked proceeds from the collection of the municipal service fee to improve streets and municipal infrastructure. *See* Ordinance § 773.03(c) (1991) ("Of the amount collected under this fee, the amount of $250,000.00 shall be allocated to improve streets and municipal infrastructure each year for the fiscal years 1991–1992, 1992–1993 and 1993–1994.") The "operation and effect" of using the proceeds to improve streets and municipal infrastructure makes the municipal service fee a tax. Currently, however, the municipal service fee is not being used in this manner. Therefore, as long as the proceeds generated from the collection of the municipal service fee are not earmarked for use other than to defray the cost of providing fire and flood protection services and as long as the proceeds do not exceed the costs of providing fire and flood protection services, we find that the "operation and effect" of the municipal service fee to be that of a fee.

■ Accordingly, we hold that an ordinance which imposes a municipal service fee pursuant to *W. Va.Code,* 8–13–13 [1971] upon

the owners of buildings at an annual rate plus a percentage based upon the square footage of space contained in each structure on the lot for the sole purpose of defraying the cost of fire and flood protection services is a user fee rather than a tax and therefore, is not in violation of the Tax Limitation Amendment found in *W. Va. Const.* Art. X, § 1.

## C.

### *Municipal service fee reasonably serves its purpose*

■ Having established the service charge in this case to be a fee, we must now determine whether the City has properly used the authority granted to it by the legislature in *W.Va.Code*, 8–13–13 [1971]. We have stated that

[t]he standard of review of an ordinance exercising such power as that granted by *W. Va.Code*, 8–13–13 [1971] is the reasonableness of the ordinance. *See Harvey v. Elkins*, 65 W.Va. 305, 64 S.E. 247 (1909). The determination of whether an ordinance reasonably serves the purpose for which it was enacted is initially made by the municipal authorities. Their passage of the ordinance gives it a presumptive validity and a court should not hold the ordinance to be invalid unless it is clear that the ordinance is unreasonable. *Henderson v. Bluefield,* 98 W.Va. 640, 127 S.E. 492 (1925).

*Ellison v. City of Parkersburg,* 168 W.Va. 468, 472, 284 S.E.2d 903, 906 (1981).

The Bacons and the Board of Education make three arguments in support of their contention that the ordinance which imposes the municipal service fee for fire and flood protection services is unreasonable as applied

to them. First, they maintain that the fee is unreasonable because it is not imposed upon all users of the fire and flood protection services. For instance, fire departments respond to automobile accidents, hazardous materials spills, tenant's fires, and vacant lots which might catch fire, yet the ordinance does not impose the municipal service fee on any of these potential users. Thus, the Bacons and the ‚Board of Education conclude that the municipal service fee for fire and flood protection does not reasonably burden the users of the services.

We disagree. We were confronted with a similar issue in *Citizens for Fair Taxation v. Clay County Comm'n,* 192 W.Va. 408, 452 S.E.2d 724 (1994), which involves a statutory provision similar to *W. Va.Code*, 8–13–13 [1971] in that it authorized a county commission to impose a special service fee upon the users of emergency ambulance services. *See W. Va.Code*, 7–15–17 [1975]. The Clay County Commission, pursuant to the authority granted to it by the legislature in *W. Va. Code,* 7–15–17 [1975], enacted an ordinance which imposed an emergency service fee of $25 a year on each household, regardless of the number of members in the household, in Clay County.

The appellants in *Citizens for Fair Taxation* argued that the imposition of the fee upon each household, regardless of the number of members in the household, was inequitable "because a single person living in an apartment pays the same $25 that the head of a ten-child household pays while the owner of a hunting camp that is used only occasionally pays nothing." *Id.* at 411, 452 S.E.2d at 727. In response to the appellants' argument, this Court stated:

We recognize that perfect equity is impossible to achieve in any tax[10] scheme,

---

10. Although this Court uses the term "tax" in the above paragraph, this Court was not confronted with the issue of whether the special emergency ambulance service fee was a tax or fee in *Citizens for Fair Taxation, supra.* Instead, this Court was confronted with the following two issues:

(1) the ambulance service fee confounds the equal and uniform property taxation requirement of *W.Va. Const.* art. X, § 1 because the fee is imposed only upon occupants of residential property and not upon mineral owners and other owners of raw land; and, (2) the gross

underassessment of natural resource property in Class III imposes an unfair burden on the homeowners in Class II[.]

*Citizens for Fair Taxation*, 192 W.Va. at 409–10, 452 S.E.2d at 725–26.

Similarly, in *Nine v. Grant Town,* 190 W.Va. 86, 88, 437 S.E.2d 250, 252 (1993) we stated that "the purpose of W. Va.Code, 8–13–13, is to allow municipalities to enact tax ordinances' to defray the cost of certain municipal services and to impose the tax on it citizens who are users of such services." (emphasis added). However, in

but perfect equity is not the test. The fee enacted by the Clay County Commission succeeds in imposing upon and collecting 'from the users of emergency ambulance service within the county a special service fee[.]' ... Given the administrative difficulties of collecting the fee on any basis other than a per household basis, we find that the fee imposed is sufficiently related to the use of the special service for which the fee is imposed that the scheme survives constitutional challenge.

*Id.* (footnote added). This Court has, thus, recognized that charges for services provided by municipalities cannot always be equally achieved upon all users. This Court will uphold the fee if it is sufficiently related to the use of the special service for which the fee is imposed.

In the case before us, although the municipal service fee is not imposed upon all users of the City's fire and flood protection services, common sense dictates that owners of property benefit most by these services. Thus, the ordinance reasonably imposes a service fee which is sufficiently related to the use of the City's fire and flood protection services.[11]

Nine, as in *Citizens for Fair Taxation,* we were not determining whether a particular charge imposed pursuant to *W. Va.Code,* 8–13–13 was a tax or fee. In that we have held in previous cases that certain charges imposed pursuant to *W. Va. Code,* 8–13–13 are fees rather than taxes, these two cases do not imply that every charge imposed pursuant to *W. Va.Code,* 8–13–13 [1971] or pursuant to a statute allowing a municipality to impose a charge for services it provides is a tax.

11. The Bacons rely on that portion of *McCoy v. City of Sistersville,* 120 W.Va. 471, 199 S.E. 260 (1938) which held that imposing a charge for street lighting, garbage collection, sewage disposal and street cleaning only on property owners to the exclusion of other users of such services (i.e. the general public) is not in conformance with a municipality's statutory authority. More specifically, the Bacons argue that *McCoy* stands for the proposition that imposing the City of Huntington's municipal service fee only on property owners to the exclusion of other users is not in conformity with *W. Va.Code,* 8–13–13 [1971].

First, we point out *McCoy* was decided under *W. Va.Code,* 8–4–20 [1933] which was replaced by *W. Va.Code,* 8–13–13 [1971]. The two statutes are worded differently in that *W. Va.Code,* 8–13–13 [1971] gives municipalities "plenary power

Second, the Bacons assert that the municipal service fee for flood protection services is unreasonably imposed upon them because their buildings are located at an elevation substantially above the flood wall. Thus, they argue they should not be required to pay fees for services from which they will never benefit.

In *City of Princeton v. Stamper,* 195 W.Va. 685, 466 S.E.2d 536 (1995), we addressed a similar issue. In that case, the City of Princeton enacted an ordinance which imposed a mandatory service fee on its residents for the collection and removal of refuse. The appellants argued that they should not be required to pay the mandatory service fee because they chose to use the services of a private hauler rather than the City of Princeton. We rejected this argument and held that "a mandatory service fee on the collection and removal of residential refuse regardless of actual use, in order to prevent a health menace from imperiling an entire community, is a reasonable and valid exercise of police powers granted to the City of Princeton under W. Va.Code 8–13–13 (1971)." *Id.* at syllabus point 2. In arriving at our conclusion we stated that "[a]ll resi-

and authority" whereas *W. Va.Code,* 8–4–20 [1933] merely provided that "municipal authority may by proper ordinance provide for ... such special service." *See Ellison v. City of Parkersburg,* 168 W.Va. 468, 472 n. 1, 284 S.E.2d 903, 906 n. 1 (1981). Although neither *W. Va.Code,* 8–4–20 [1933] nor 8–13–13 [1971] explains what method is to be used to identify who is a "user" of an essential or special service, this Court has given more deference to a municipality's definition of user under *W. Va.Code,* 8–13–13 [1971]'s "plenary power and authority" language than we did under *W. Va.Code,* 8–4–20 [1933]. *See* syl. pt. 2, *City of Princeton v. Stamper,* 195 W.Va. 685, 466 S.E.2d 536 (1995) (Upholding an ordinance which imposes a "service fee on the collection and removal of residential refuse regardless of actual use, ... is a reasonable and valid exercise of police powers granted to the City of Princeton under W. Va.Code, 8–13–13 (1971).").

More relevant to the cases before us, in *McCoy* this Court held that imposing a charge on the property owner for fire protection services was a reasonable exercise of power granted to the City of Sistersville under the predecessor to *W.Va. Code,* 8–13–13 [1971], although this Court warned that basing the charge on the value of the property could violate the Tax Limitation Amendment of our state constitution. Thus, *McCoy* does not support the Bacons' argument.

dents, regardless of how they personally choose to dispose of their refuse, receive a benefit in the collection and disposal of refuse from other premises in the community." *Id.* at 688, 466 S.E.2d at 539.

Similarly, in this case, all property owners benefit from the flood wall protection services. The Bacons, however, disagree and argue that the facts in their case are more akin to the facts in *Duling Bros. Co. v. City of Huntington,* 120 W.Va. 85, 196 S.E. 552 (1938). In *Duling* this Court upheld a plan devised by city council which imposed special assessments on certain properties, but not others, in order to pay for the construction of the flood wall in Huntington. Though the city council did not assess property which had never been flooded, as it did not benefit from the flood wall protection, it did assess land submerged by the 1937 flood and land covered in lesser floods.

The Bacons argue that the assessment at issue in *Duling,* which was authorized by Acts 1935, c. 68 rather than the predecessor to *W. Va.Code,* 8–13–13 [1971], is not unlike a user fee which can only be charged to a user of the service who benefits from the service. Though we do not quarrel with the Bacons' statement that the user of the service must benefit therefrom, "[i]t is not requisite to the validity of an assessment . . . that the benefits be immediate or direct or that protection from floods be absolute. Municipal determination of the lands benefited, unless arbitrarily exercised, will not be disturbed by the courts." Syl. pt. 4, in relevant part, *Duling Bros. Co., supra.*

▇▇ Therefore, while the Bacons may not immediately or directly benefit from the flood protection service fee, the City has determined that all property owners benefit from flood protections services which gives the ordinance "a presumptive validity[. Therefore, this] . . . court should not hold the ordinance to be invalid unless it is clear that the ordinance is unreasonable." *Ellison,* 168 W.Va. at 472, 284 S.E.2d at 906 (citation omitted). We do not find that the ordinance is unreasonable. Thus, the circuit court did not err in ordering the Bacons to pay the municipal service fee.

Third, the Board of Education argues that because it is prohibited from expending money except on those items which are expressly authorized by statute, the City may not impose the municipal service fee on it. The Board of Education relies on *Honaker v. Board of Education,* 42 W.Va. 170, 24 S.E. 544 (1896), which held that a board of education can only exercise power which is expressly conferred upon it by statute.

▇▇ Conversely, the City maintains that this Court has addressed this issue in *City of Charleston v. Board of Education,* 158 W.Va. 141, 145–46, 209 S.E.2d 55, 57 (1974) and has concluded that

[i]t would appear from the authorities that the statute authorizing the City to charge the fee for fire protection to property owners who are the users of such service [*W. Va.Code,* 8–13–13] gives the City the power and authority to make such charges against the Board of Education of Kanawha County because such fee is not a tax and whether or not it is collectible from the Board of Education does not relieve the Board of a **moral obligation** to pay for such protection or service.

(emphasis added). In that we agree with the Board of Education's assertion that a board of education can only exercise power which is expressly conferred upon it by statute, and therefore, does not have a "moral obligation" to do anything, we now revisit our analysis in *City of Charleston.*

▇▇ In syllabus point 4 of *Shinn v. Board of Education,* 39 W.Va. 497, 20 S.E. 604 (1894), we held:

The Board of Education of a school-district is a corporation created by statute with functions of a public nature expressly given and no other; and it can exercise no power not expressly conferred or fairly arising from necessary implication, and in no other mode than that prescribed or authorized by the statute.

*See Bailey v. Truby,* 174 W.Va. 8, 15, 321 S.E.2d 302, 309 (1984). *See also* syl. pt. 1, *Evans v. Hutchinson,* 158 W.Va. 359, 214 S.E.2d 453 (1975); *Board of Education v. Commercial Casualty Insurance Co.,* 116 W.Va. 503, 506, 182 S.E. 87, 89 (1935); *Her-*

*ald v. Board of Education,* 65 W.Va. 765, 65 S.E. 102 (1909); and *Honaker, supra. W. Va.Code,* 18–5–1, *et seq.* sets forth the authority of county boards of education. More specific to the issue now before us, *W. Va. Code,* 18–5–9 [1933] states:

> The [county board of education] **shall provide**:
>
> (1) By purchase, lease, building or otherwise, a sufficient number of suitable schoolhouses and other buildings to meet the educational needs of its district;
>
> (2) The necessary furniture, fixtures, apparatus, fuel and all necessary supplies for the schools;
>
> (3) **For the health and cleanliness of the pupils;**
>
> (4) **For the repair and good order of the school grounds, buildings and equipment.**
>
> The board may also provide for medical and dental clinics.

(emphasis added). Obviously, the above language authorizes the Board of Education to pay the municipal service fee imposed by the City. After all, fire and flood protection services protect the health of pupils and keep school grounds and buildings in good order, and *W. Va.Code,* 18–5–9 [1933] clearly mandates the Board of Education to protect the health of pupils and to keep school grounds and buildings in good order. *See* syl. pt. 1, *State v. Warner,* 172 W.Va. 502, 308 S.E.2d 142 (1983) ("Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation.")

■ Moreover, although the legislature specifically stated that "[a]ll public school property used for school purposes shall be exempt from execution or other process, and free from lien or distress for taxes or municipal, county or state levies[,]" *W. Va.Code,* 18–5–5 [1933] is silent as to whether the Board of Education is exempt from paying fees imposed by the City pursuant to *W. Va.Code,* 8–13–13 [1971] on the users of essential or

special municipal services. *W. Va.Code,* 18–5–5 [1933], in relevant part. We have been unable to find, nor did the parties supply us with, any statute which specifically exempts the Board of Education from paying such fees. A general rule of statutory construction is that "the exclusion of one subject or thing in a statute is the inclusion of all others." *Johnson v. Continental Casualty Co.,* 157 W.Va. 572, 578, 201 S.E.2d 292, 296 (1973) (citations omitted).

■ Therefore, although we disapprove of the analysis used in *City of Charleston, supra,* we agree with the result. Accordingly, we hold that pursuant to *W. Va.Code,* 18–5–9 [1933], a county board of education is authorized to pay a municipal service fee imposed by a municipality for fire and flood protection services pursuant to *W. Va.Code,* 8–13–13 [1971] in order to protect the health of its pupils and in order to keep its school grounds and buildings in good order.

### III.

We make the above holdings with reservations. This Court has previously recognized "the financial plight of municipalities and the continuing need to generate revenue." *Hare,* 171 W.Va. at 290, 298 S.E.2d at 826. However, our approval today as to the imposition of the fee on the Bacons and the Board of Education should not open the "floodgates" to creative financing so that a municipality fees a citizen to death, thereby doing exactly what the Tax Limitation Amendment in *W. Va. Const.* Art. X, § 1 sought to prevent. For this reason, we strongly encourage the legislature to revisit *W. Va.Code,* 8–13–13 [1971] and attempt to more explicitly define the authority of municipalities to impose user fees or charges so as to protect our state citizens. The legislature should specifically list who, if anyone, is exempt from paying the user fee. If and when the legislature makes such a list, it should be mindful of the provisions of the *West Virginia Constitution,* such as our equal protection provision.[12] More-

---

12. Because *W. Va.Code,* 8–13–13 [1971] is not explicit, this Court has been forced to resolve the issues arising under that *Code* section on a case-by-case basis. The results have led to decisions which are not easily harmonized. The difficulty this Court faces is trying to resolve the issues arising under *W. Va.Code,* 8–13–13 [1971] in a consistent manner while at the same time still properly defer to the legislature. However, we cannot read the minds of the legislators and

over, because *W. Va.Code*, 18–5–9 [1993], which outlines the authority of county boards of education, is very broad, we encourage the legislature to revisit that code section to clarify for the county boards of education what their obligation is pursuant to that *Code* section.

In summary, we affirm the circuit court's entry of summary judgment for the City in *The City of Huntington v. John A. Bacon.* Additionally, we have answered the certified question in *The City of Huntington v. The Cabell County Board of Education* as follows: (1) The Fourth Circuit Court of Appeals decision in *City of Huntington* does not collaterally estop the City from raising the issue of whether the municipal service fee is a fee or tax; (2) the municipal service fee is a fee and not a tax; and (3) the legislature authorized the Board of Education to pay the municipal service fee at issue in *W. Va.Code*, 18–5–9 [1993].

No. 23067—affirmed.

No. 23070—Certified Question Answered.

consistently guess how they would resolve the issues arising under that *Code* section. Thus, the legislature is the more appropriate branch to reconcile the problems which have arisen under *W. Va.Code*, 8–13–13 [1971]. However, when resolving these problems, neither this Court nor the legislature may ignore the *West Virginia Constitution.* Although not an issue now before us, we have grave concerns as to what the implications of exempting certain persons, governmental entities or other similar categories of users from paying a charge imposed pursuant to *W. Va.Code*, 8–13–13 [1971] will be under the equal protection clause of our Constitution. Therefore, we strongly encourage the legislature to provide explicit guidance to municipalities as to how a charge is to be imposed pursuant to *W. Va.Code*, 8–13–13 [1971] so as not to run afoul of any of the provisions of the *West Virginia Constitution.*