IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2015 Term

_____

No. 14-1209

_____

FILED
November 4, 2015
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

RANDY WAUGH/WAUGH'S MOBILE HOME PARK,
Defendant Below, Petitioner

v.

MORGAN COUNTY EMERGENCY MEDICAL
SERVICES BOARD, INC.,
Plaintiff Below, Respondent

_____

Appeal from the Circuit Court of Morgan County
The Honorable Christopher C. Wilkes, Judge
Civil Action No. 13-C-147

AFFIRMED

_____

Submitted: October 6, 2015
Filed:  November 4, 2015

Michael L. Scales, Esq.                          Richard G. Gay, Esq.
Michael L. Scales, PLLC                          Law Office of Richard G. Gay, LC
Martinsburg, West Virginia                       Berkeley Springs, West Virginia
Attorney for Petitioner                          Attorney for Respondent

JUSTICE BENJAMIN delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.     "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995).

2.     "The primary rule of statutory construction is to ascertain and give effect to the intention of the Legislature." Syl. pt. 8, *Vest v. Cobb*, 138 W. Va. 660, 76 S.E.2d 885 (1953).

3.     "Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syl. pt. 2, *State v. Elder*, 152 W. Va. 571, 165 S.E.2d 108 (1968).

4.     "A statute is enacted as a whole with a general purpose and intent, and each part should be considered in connection with every other part to produce a harmonious whole. Words and clauses should be given a meaning which harmonizes with the subject matter and the general purpose of the statute. The general intention is the key to the whole and the interpretation of the whole controls the interpretation of its parts." Syl. pt. 1, *State ex rel. Holbert v. Robinson*, 134 W. Va. 524, 59 S.E.2d 884 (1950).

5.     "In the construction of a legislative enactment, the intention of the legislature is to be determined, not from any single part, provision, section, sentence, phrase or word, but rather from a general consideration of the act or statute in its entirety." Syl. pt. 1, *Parkins v. Londeree*, 146 W. Va. 1051, 124 S.E.2d 471 (1962).

6.     A county commission may impose and collect "special emergency ambulance service fees" pursuant to W. Va. Code § 7-15-17 (1999), which is contained in the Emergency Ambulance Service Act of 1975, W. Va. Code § 7-15-1, *et seq.* An ambulance authority, created by a county commission pursuant to W. Va. Code § 7-15-4, may bring a civil action to collect "special emergency ambulance service fees."

7.     "An emergency ambulance service fee that taxes each household regardless of the number of members $25 a year to support ambulance services succeeds in tying the burden of the fee to the usage of the service in a sufficiently reasonable way to satisfy the requirements of *W. Va.Code* 7-15-17 [1975] and it is valid, lawful and enforceable under *W. Va.Code* 7-15-17 [1975]." Syl. pt. 1, *Clay Cty. Citizens v. Clay Cty. Comm'n*, 192 W. Va. 408, 452 S.E.2d 724 (1994).

Benjamin, Justice:

Petitioner Randy Waugh/Waugh's Mobile Home Park appeals the October 29, 2014, final order of the Circuit Court of Morgan County that granted relief to Respondent Morgan County Emergency Medical Services Board, Inc. ("the Board") in the Board's action against the petitioner for the collection of delinquent special emergency ambulance service fees. After reviewing the circuit court's order, the parties' arguments, the appendix, and the applicable law, we affirm the circuit court's order.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Randy Waugh is the owner of Waugh's Mobile Home Park, which is a sixty-space mobile home park located in Morgan County. Fifteen mobile home spaces in the park have mobile homes on them that are owned by the petitioner and rented to tenants.

Respondent Morgan County Emergency Medical Services Board, Inc. is a public corporation created by the County Commission of Morgan County pursuant to W. Va. Code § 7-15-4 (1975) for the purpose of providing emergency ambulance service in Morgan County. Pursuant to the Morgan County, West Virginia Special Emergency Ambulance Service Fee Ordinance ("the ordinance"), a special emergency ambulance service fee is imposed on each county residence for the previous fiscal year from July 1 through June 30. This service fee is assessed for each of the petitioner's fifteen rental

1

units based on information provided by the petitioner to the Morgan County Assessor's Office. This information contained the names and addresses of the renters of the fifteen rental units and also indicated which of the units were vacant as of July 1 of each year.

The Board brought an action against the petitioner alleging that the petitioner owed delinquent special emergency ambulance service fees on the rental units in the petitioner's mobile home park for tax years 2008, 2009, 2010, 2011, and 2012. All of the claims for delinquent emergency ambulance service fees pertain to the petitioner's fifteen rental units and arise from instances in which the petitioner failed to pay the service fees on rental units which were vacant on the July 1 assessment date or in which only the petitioner, and not the occupants of rental units, were billed for payment of the service fees. In defense of his failure to pay the fees at issue, the petitioner challenged the Board's ability to sue him for the collection of delinquent service fees in the absence of joinder of the Morgan County Commission. The petitioner further asserted that the Morgan County, West Virginia Special Emergency Ambulance Service Fee Ordinance acts unlawfully to the extent that it provides for the joint and several liability of both the owner and renter of each rental for payment of the service fee unit and to the extent that the ordinance assesses a service fee for rental units that are vacant on July 1 of the previous year.

In its action against the petitioner, the Board requested judgment as to the delinquent service fees, interest, and court costs; that the circuit court declare that the

Morgan County Commission has express statutory power to create the Morgan County Emergency Medical Services Board; that the county commission has the statutory authority to authorize the Board to collect all delinquent ambulance fees; and that the Board has the power in its own right to institute legal proceedings for the collection of delinquent ambulance service fees.

In its October 29, 2014, order, the Circuit Court of Morgan County granted the Board all of the relief it requested. The petitioner now challenges the circuit court's order in this appeal.

## II.    STANDARD OF REVIEW

The resolution of this case requires this Court to determine the meaning of a statutory provision. We have previously held that "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995). In addition, we are called upon to determine the validity of portions of a county ordinance which also involves the application of a *de novo* review. *McClure v. City of Hurricane*, 227 W. Va. 482, 485, 711 S.E.2d 552, 555 (2010) (explaining that "[a] de novo standard of review also governs the interpretation of . . . a municipal ordinance as it involves a purely legal question." *citing* syl pt. 1, *Appalachian Power Co. v. State Tax Dep't of W. Va.*, 195 W. Va. 573, 466 S.E.2d 424 (1995)). Having

set forth the appropriate standard of review, we now proceed to our analysis of the issues herein.

## III.    ANALYSIS

This case involves the application of specific provisions of the Emergency Ambulance Service Act of 1975, W. Va. Code §§ 7-15-1 to -18 (sometimes referred to as "the Act"). The purpose of the Act is set forth in W. Va. Code § 7-15-2 (1975) as follows:

> The legislature hereby finds and declares:
> (a) That a significant part of the population of this State does not have adequate emergency ambulance service;
> (b) That the establishment and maintenance of adequate emergency ambulance systems for the entire State is necessary to promote the health and welfare of the citizens and residents of this State;
> (c) That emergency ambulance service is not likely to become available to all the citizens and residents of this State unless specific requirements therefor are provided by law;
> (d) That emergency ambulance service is a public purpose and a responsibility of government for which public money may be spent; and
> (e) This article is enacted in view of these findings and shall be liberally construed in the light thereof.[1]

(Footnote added).

In order to further the purpose set forth in W. Va. Code § 7-15-2, the Legislature imposed a duty on the county commission of each county to provide

---

[1] W. Va. Code § 7-15-18 (1975) also provides that "[t]he provisions of this article shall be liberally construed to accomplish its purpose."

4

ambulance service to its residents either directly or by delegation to or contract with a separate entity. According to W. Va. Code § 7-15-4 (1975),

> [e]xcept as hereinafter provided and in addition to all other duties imposed upon it by law, the county commission shall cause emergency ambulance service to be made available to all the residents of the county where such service is not otherwise available: Provided, however, That the duty imposed upon county commissions by this article shall not be construed in such manner as to impose a duty to cause such emergency ambulance service to be provided unless the commission shall make an affirmative determination that there are funds available therefor by the inclusion of a projected expenditure for such purpose in the current levy estimate, and in the event that such county commission shall make such determination the commission shall not be under a duty to cause such service to be provided beyond a level commensurate with the amount of funds actually available for such purpose.
>
> The county commission may provide the service directly through its agents, servants and employees; or through private enterprise; or by its designees; or by contracting with individuals, groups, associations, corporations or otherwise; or it may cause such services to be provided by an authority, as provided for in this article; and any municipality or county, or both, or any two or more municipalities within any county or contiguous counties, or any two or more contiguous counties, or any combination thereof, may create an authority. Such authority shall be created upon the adoption, by the governing body of each participating government, acting individually, of an appropriate ordinance or order. Each authority shall constitute a public corporation, and as such, shall have perpetual existence. The authority shall be known by such name as may be established by the board.

The Morgan County Commission, pursuant to this provision, created an ambulance authority to provide ambulance service to county residents.[2] The authority is managed by Respondent Board pursuant to W. Va. Code § 7-15-5 (1975).[3]

West Virginia Code § 7-15-10 (1999), sets forth the general powers and duties of an ambulance authority created pursuant to W. Va. Code § 7-15-4. According to this code section,

> Each authority is hereby given the power:
> (a) To sue and be sued, implead and be impleaded;
> (b) To have and use a seal and alter the same at pleasure;
> (c) To make and adopt all rules and regulations and bylaws as may be necessary or desirable to enable it to exercise the powers and perform the duties conferred or imposed upon it by the provisions of this article;
> (d) To provide emergency ambulance service, maintain and operate such service, and employ, in its discretion, planning consultants, attorneys, accountants, superintendents, managers and such other employees and agents as may be necessary in its judgment and fix their compensation;
> (e) To acquire by grant, purchase, gift, devise or lease and to hold, use, sell, lease or otherwise dispose of real and personal property of every kind and nature whatsoever, licenses, franchises, rights and interests necessary for the full

---

[2] The Act defines "authority" in W. Va. Code § 7-15-3(a) (1975) as "any emergency ambulance service authority created pursuant to the provisions of this article."

[3] According to W. Va. Code § 7-15-5 (1975), in part,

> [t]he management and control of any authority, its operations, business and affairs shall be lodged in a board of not less than five nor more than fifteen individuals who shall be known as members of the board and who shall be appointed for terms of three years each by the governing bodies of the participating governments.

exercise of its powers pursuant to the provisions of this article or which may be convenient or useful for the carrying out of such powers;

(f) To enter into contracts and agreements which are necessary, convenient or useful to carry out the purposes of this article with any person, public corporation, state or any agency or political subdivision thereof and the federal government and any department or agency thereof, including, without limitation, contracts and agreements for the joint use of any property and rights by the authority and any person or authority operating any system, whether within or without the service area of the authority, and contracts and agreements with any person or authority for the maintenance, servicing, storage, operation or use of any system or part thereof, facility or equipment on such basis as shall seem proper to its board;

(g) To enter into contracts and agreements for superintendence and management services with any person, who has executive personnel with experience and skill applicable to the superintendence and management of any system, for the furnishing of its services and the services of experienced and qualified personnel for the superintendence and management of any system or any part thereof, including, without limitation, superintendence over personnel, purchases, properties and operations and all matters relating thereto, and any revenue bond trust indenture may require such contract or agreement, but the personnel whose services are to be so furnished under any such contract or agreement shall not include any member of the board, any member of the immediate family of a member of the board or any agents or employees of the authority;

(h) To execute security agreements, contracts, leases, equipment trust certificates and any other forms of contract or agreement, granting or creating a lien, security interest, encumbrance or other security in, on or to facilities and equipment, containing such terms and provisions as the board considers necessary;

(i) To apply for, receive and use grants, grants-in-aid, donations and contributions from any source or sources, including, but not limited to, the federal government and any agency or department thereof, and a state government whose constitution does not prohibit such grants, grants-in-aid, donations and contributions, and any agency or department

7

thereof, and to accept and use bequests, devises, gifts and donations from any person;

(j) To encumber or mortgage all or any part of its facilities and equipment;

(k) To render all services permitted pursuant to article four-c [§§ 16-4C-1 et seq.], chapter sixteen of this code, including, but not limited to, emergency and nonemergency transportation; and

*(l)* To do any and all things necessary or convenient to carry out the powers given in this article unless otherwise forbidden by law. (Italics in original).

Finally, W. Va. Code § 7-15-17 (1999), which is the provision directly at issue in this case, pertains to the imposition and collection of a special emergency ambulance service fee by a county commission and provides as follows:

A county commission may, by ordinance, impose upon and collect from the users of emergency ambulance service within the county a special service fee, which shall be known as the "special emergency ambulance service fee." The proceeds from the imposition and collection of any special service fee shall be deposited in a special fund and used only to pay reasonable and necessary expenses actually incurred and the cost of buildings and equipment used in providing emergency ambulance service to residents of the county. The proceeds may be used to pay for, in whole or in part, the establishment, maintenance and operation of an authority, as provided for in this article: Provided, That an ambulance company or authority receiving funds from the special emergency ambulance fees collected pursuant to this section may not be precluded from making nonemergency transports.

Having set forth the pertinent code provisions at issue, we will now consider the assignments of error raised by the petitioner.

**A. Ambulance Authority's Collection of Delinquent Service Fees**

In its October 29, 2014, order, the circuit court concluded that an ambulance authority has the express power to collect delinquent service fees because the power was lawfully delegated to the authority by the county commission pursuant to W. Va. Code § 7-15-4. In so concluding, the circuit court reasoned that W. Va. Code § 7-15-4 authorizes a county commission to create an emergency ambulance service authority for the purpose of providing ambulance service to county residents. In addition, W. Va. Code § 7-15-10 expressly empowers an ambulance authority to perform twelve enumerated acts the last of which is "[t]o do any and all things necessary or convenient to carry out the powers given in this article unless otherwise forbidden by law." W. Va. Code § 7-15-10*(l)*. The circuit court reasoned that it is certainly convenient to allow an ambulance authority to sue to collect delinquent fees without diverting the time and attention of the county commission to join a suit for the collection of such fees. The circuit court further adduced that the most commonsensical interpretation of W. Va. Code §§ 7-15-4 and -10 is that an ambulance authority steps into the shoes of the county commission and assumes all of the powers of the county commission regarding the provision of emergency ambulance services and the collection of ambulance service fees to fund the ambulance service. Therefore, the circuit court concluded that because a county commission is authorized in W. Va. Code § 7-15-17 to collect special emergency ambulance service fees, an ambulance authority also is authorized to collect such fees as a result of the powers delegated to it by W. Va. Code §§ 7-15-4 and -10.

9

In his challenge to the circuit court's ruling, the petitioner posits that W. Va. Code § 7-15-17 is unambiguous and clearly indicates that a county commission is empowered to impose and collect emergency ambulance service fees from users of an ambulance service within the county. The petitioner contends that because W. Va. Code § 7-15-17 is unambiguous, it should be applied as written and not construed. The petitioner further contends that because W. Va. Code § 7-15-17 specifically prescribes that a county commission shall impose and collect service fees, this is the only manner in which such fees can be imposed and collected. Finally, the petitioner avers that because W. Va. Code § 7-15-17 is the specific statute regarding the imposition and collection of service fees, it should be given precedence over more general statutes such as W. Va. Code § 7-15-4, providing for the creation of ambulance authorities, and W. Va. Code § 7-15-10, pertaining to the powers of ambulance authorities. Therefore, the petitioner concludes that a reading of W. Va. Code § 7-15-17 pursuant to this Court's rules of statutory construction compels the finding that a county commission, not an ambulance authority, has the power to bring an action for the collection of delinquent special emergency ambulance service fees.

We begin our analysis of this issue with the well-established principle that "[t]he primary rule of statutory construction is to ascertain and give effect to the intention of the Legislature." Syl. pt. 8, *Vest v. Cobb*, 138 W. Va. 660, 76 S.E.2d 885 (1953). Also, "[w]here the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syl. pt. 2, *State v. Elder*, 152

10

W. Va. 571, 165 S.E.2d 108 (1968). In the instant case, this means that we should read

W. Va. Code § 7-15-17 so as to give effect to the Legislature's intent in enacting the

Emergency Ambulance Service of Act. In addition, this Court has indicated that

> "[a] statute is enacted as a whole with a general purpose and intent, and each part should be considered in connection with every other part to produce a harmonious whole. Words and clauses should be given a meaning which harmonizes with the subject matter and the general purpose of the statute. The general intention is the key to the whole and the interpretation of the whole controls the interpretation of its parts.

Syl. pt. 1, *State ex rel. Holbert v. Robinson*, 134 W. Va. 524, 59 S.E.2d 884 (1950).

Finally, this Court has stated that "[i]n the construction of a legislative enactment, the

intention of the legislature is to be determined, not from any single part, provision,

section, sentence, phrase or word, but rather from a general consideration of the act or

statute in its entirety." Syl. pt. 1, *Parkins v. Londeree*, 146 W. Va. 1051, 124 S.E.2d 471

(1962).

The petitioner essentially urges this Court to limit our consideration of the

issue before us to the single phrase in W. Va. Code § 7-15-17 that "[a] county

commission may, by ordinance, impose upon and collect" special emergency ambulance

service fees and to find from this phrase that only a county commission can sue to collect

delinquent ambulance service fees. We decline to do so because such a position is

contrary to our rules of statutory construction set forth above.

11

Our primary duty in determining the meaning of W. Va. Code § 7-15-17 is to give effect to the Legislature's purpose in enacting the Emergency Ambulance Service Act of 1975. The purpose of the Act as declared in W. Va. Code § 7-15-2 is the establishment and maintenance of adequate emergency ambulance systems for the entire State. To achieve this purpose, the Legislature has provided in W. Va. Code § 7-15-4 that a county commission may cause emergency ambulance services to be provided by an ambulance authority which is granted broad powers pursuant to W. Va. Code § 7-15-10, including the power "[t]o do any and all things necessary and convenient to carry out the powers given in this article unless otherwise forbidden by law." W. Va. Code § 7-15-10*(l)*. This Court's consideration of each part of the Act in connection with every other part to produce a harmonious whole that effectuates the purpose of the Act, convinces us that W. Va. Code § 7-15-17 does not indicate that only a county commission can bring an action to collect delinquent special emergency ambulance service fees. The narrow and hyper-literal construction of W. Va. Code § 7-15-17 urged upon us by the petitioner conflicts with the duties of an ambulance authority provided for in W. Va. Code § 7-15-4, the broad powers of an ambulance authority granted in W. Va. Code § 7-15-10, and a liberal construction of the Act. It also frustrates the very purpose of the Act. Therefore, we conclude that W. Va. Code § 7-15-17, when read as part of the Act as a whole, empowers a county commission to pass an ordinance which provides for the imposition and collection of emergency ambulance service fees to aid in funding emergency ambulance service in the county. The statute does not indicate that only a county commission can collect delinquent ambulance service fees.

12

A second objection raised by the petitioner to the circuit court's construction of W. Va. Code § 7-15-17 is that it conflicts with several other provisions in the statute. The petitioner points out that pursuant to W. Va. Code § 7-15-17, the proceeds from the collection of service fees shall be deposited in a special fund. The petitioner explains that there are rules governing the creation and use of special funds. The petitioner cites W. Va. Code § 7-1-9 (1967), which provides that county commissions are "authorized and empowered to create and establish, by proper order, special funds to be used for any purpose which such [commissions] now or hereafter may by the provisions of chapter seven [§§ 7-1-1 et seq.] or article eleven [§§ 8-11-1 et seq.], chapter eight of this code be authorized to accomplish." Further, notes the petitioner, "[e]xpenditures from any special fund created pursuant to the provisions of [§ 7-1-9] shall be made only for the purpose for which the special fund was created and established." W. Va. Code § 7-1-9. The petitioner notes that pursuant to W. Va. Code § 7-15-17, ambulance service fees are to be deposited in a special fund "and used only to pay reasonable and necessary expenses actually incurred and the cost of buildings and equipment used in providing emergency ambulance service to residents of the county," along with "the establishment, maintenance and operation of an authority." The petitioner asserts that if an ambulance authority is permitted to collect delinquent ambulance service fees, the rules governing the maintenance and use of the special fund created by W. Va. Code § 7-15-17 are frustrated in that there is no guarantee that the funds will be properly deposited in a special fund or used for the purposes mandated by W. Va. Code § 7-15-17. The petitioner further suggests that a county commission that does not collect ambulance

13

service fees is not fulfilling its constitutional obligation pursuant to article IX, section 11 of the state constitution, regarding the superintendence and maintenance of the county's fiscal affairs.

We find no merit to the petitioner's argument. Section Four of the Morgan County ordinance at issue in this case provides as follows:

> All revenues received in accordance with this Ordinance shall be deposited into a special fund to be known as the Morgan County Emergency Medical Services Fund. These funds shall be used only to pay reasonable and necessary expenses actually incurred, including personnel, and the cost of buildings and equipment used in providing emergency ambulance service to residents of the county and others that might require such services. No expenditures in excess of each EMS agency's budget shall be made during the Fiscal Year without the formal approval of the Morgan County Commission.

Significantly, this ordinance provision conforms to the requirements of W. Va. Code § 7-15-17 regarding the placement and uses of the proceeds from the collection of special emergency ambulance service fees. Further, the petitioner does not specifically allege nor does he cite to evidence in the appendix that shows that the delinquent fees collected by the Board are not being deposited or used as required by W. Va. Code § 7-15-17 and as provided for in the ordinance. As a result, we find that the Board's collection of delinquent special emergency ambulance service fees does not conflict with the requirements in W. Va. Code § 7-15-17 that the proceeds from the fees are to be placed in a special fund and used for specific purposes.

14

Accordingly, for the reasons stated above, we find that the circuit court did not err in ruling that Respondent Morgan County Emergency Medical Services Board may bring an action to collect delinquent special emergency ambulance service fees, and we affirm the circuit court's ruling on this issue. Therefore, we hold that a county commission may impose and collect "special emergency ambulance service fees" pursuant to W. Va. Code § 7-15-17 (1999), which is contained in the Emergency Ambulance Service Act of 1975, W. Va. Code § 7-15-1, *et seq.* An ambulance authority, created by a county commission pursuant to W. Va. Code § 7-15-4, may bring a civil action to collect "special emergency ambulance service fees."

## B. Joint and Several Liability for Payment of Service Fees

The petitioner next assigns as error the circuit court's upholding of the provision in the Morgan County, West Virginia Special Emergency Ambulance Fee Ordinance that provides that the owner and a tenant of rental property are jointly and severally liable for paying the special emergency ambulance service fee.

The Morgan County ordinance provides in section one that "[b]oth occupant and owner shall be jointly and severally liable for payment of [the special emergency ambulance service fee] for each living unit."[4] The petitioner contends that this

---

[4] "Living Unit" is defined in the ordinance as "[a]ny place of residence as classified by the records of the Morgan County Assessor, including residential homes, vacation and secondary homes, mobile homes, apartments, personal care facilities, nursing homes, and correctional care facilities."

15

provision is invalid because it conflicts with W. Va. Code § 7-15-17, which provides that an ambulance service fee is to be imposed upon and collected *from the users* of emergency ambulance service in the county. According to the petitioner, he should not be responsible for paying the service fee for occupants of his rental units because he is not a user of emergency ambulance service for those units. The petitioner further avers that the ordinance provision violates syllabus point 1 of *Clay County Citizens for Fair Taxation v. Clay County Commission*, 192 W. Va. 408, 452 S.E.2d 724 (1994), in which this Court held:

> An emergency ambulance service fee that taxes each household regardless of the number of members $25 a year to support ambulance services succeeds in tying the burden of the fee to the usage of the service in a sufficiently reasonable way to satisfy the requirements of *W. Va.Code* 7-15-17 [1975] and it is valid, lawful and enforceable under *W. Va.Code* 7-15-17 [1975].

The petitioner complains that while the ordinance provides that both he, as owner, and his tenants are jointly and severally liable for the service fee, he is the only party who is sent an invoice for the payment of the service fee. The petitioner posits that this is especially egregious considering the fact that the Morgan County Assessor was supplied with his renters' names and addresses. According to the petitioner, his payment of the service fee for occupants of his rental units does not tie the burden of paying the fee to the usage of the ambulance service by the rental unit occupants as required by syllabus point 1 of *Clay County Citizens*.

The circuit court, in upholding the ordinance provision providing for joint and several liability for the payment of the emergency ambulance service fee, relied on

16

this Court's opinion in *Ellison v. City of Parkersburg*, 168 W. Va. 468, 284 S.E.2d 903

(1981). In *Ellison*, this Court determined to be valid a municipal ordinance which stated

in relevant part:

> (a) Each property owner or occupant of a residential unit shall be responsible for the payment of a charge of Forty-eight Dollars ($48.00) per year for solid waste collection and disposal service per residential unit. . . .
>
> (b) The rates and charges specified by Section (a) herein shall be billed to the owners of each and every residential unit provided, that upon application by the occupant of any residential unit, filed with the Director of Finance and accompanied by an appropriate affidavit showing the occupant's status as such, such bills may be rendered to the occupant.

*Id.* at 469–470, 284 S.E.2d at 904. The petitioners in *Ellison* challenged the ordinance on

the ground that it imposed a charge for the collection and disposal of solid waste on

owners of residential units rather than on the users of those services. In rejecting the

challenge to the ordinance, this Court explained:

> In operation this system should work fairly and effectively to serve the purpose of placing the cost of the services on the user of the service. Where the owner is also the occupant of the residential unit it is clear that the proper party is being billed. Where the owner is a landlord he will be billed for the service but, upon notice to the Director of Finance, the occupant will be billed directly. Alternatively, the landlord-owner may pay the charge and then pass the cost on to his tenant. In either case the user ultimately pays the fee. We do not think that it is inherently unreasonable for the city to initially bill the owner of the property, whose identity is readily ascertainable, and to leave the question of who actually pays to the private parties involved.

*Id.* at 473, 284 S.E.2d at 906.

17

The circuit court below relied on this reasoning in *Ellison* in the instant case as follows:

> The reasoning of the *Ellison* Court is equally pertinent here. . . . As noted by both the *Ellison* Court and the [Morgan County Emergency Medical Services Board] the residency of tenants is fleeting, and direct collection therefrom would place a great burden on the [Morgan County] Commission to assess fees in the correct shares to the correct tenants. [Randy Waugh] appears correct in his assertion that the tenants of property are the true users of the ambulance service; and the Courts of this state have already found billing the owner of property primarily is a reasonable method of assessing the fee to these true users, leaving the matter between the private parties to the lease as to who will be the ultimate payer.

The petitioner attempts to distinguish *Ellison* from the facts of the instant case by asserting that W. Va. Code § 8-13-13,[5] the enabling statute for passage of the municipal ordinance at issue in *Ellison*, is not remotely akin to W. Va. Code § 7-15-17,

---

[5] According to the applicable portion of W. Va. Code § 8-13-13 (1971), the version of the statute in effect when *Ellison* was decided:

> Notwithstanding any charter provisions to the contrary, every municipality which furnishes any essential or special municipal service, including but not limited to, police and fire protection, parking facilities on the streets or otherwise, parks and recreational facilities, street cleaning, street lighting, street maintenance and improvement, sewerage and sewage disposal, and the collection and disposal of garbage, refuse, waste, ashes, trash and any other similar matter, shall have plenary power and authority to provide by ordinance for the installation, continuance, maintenance or improvement of the service, to make reasonable regulations with respect thereto, and to impose by ordinance upon the users of such service reasonable rates, fees and charges to be collected in the manner specified in the ordinance.

18

the enabling statute in the present case. The petitioner points out that this Court said in *Ellison* that a municipality has plenary authority to enact ordinances regarding essential and special municipal services and, as a result, municipal ordinances enacted pursuant to W. Va. Code § 8-13-13 are presumptively valid and reviewed by this Court under a reasonableness standard. In contrast, says the petitioner, this Court has never found that a county commission has plenary power to enact ordinances or that such ordinances are presumptively valid. The petitioner suggests that we should review the county ordinance at issue in a less deferential way than we would review a municipal ordinance.

This Court finds no merit in the petitioner's attempt to distinguish *Ellison* from the instant case.[6] Significantly, in *Clay County Citizens,* supra, which involved the validity of a county ordinance enacted pursuant to W. Va. Code § 7-15-17, this Court relied in part on our decision in *Ellison* and indicated that the Clay County ambulance fee "is imposed under a scheme similar to fees imposed under *W. Va.Code* 8-13-13 [1971] which authorizes special charges for municipal services and the imposition upon the users of such service reasonable rates, fees and charges." 192 W. Va. at 411, 452 S.E.2d at 727 (internal quotation marks and citations omitted). In addition, this Court reviewed the county ordinance in *Clay County Citizens* for its reasonableness, just as we reviewed the municipal ordinance in *Ellison*. *See* syl. pt. 1, *id.* (finding that the nexus between the burden of paying the service fee and the usage of the ambulance service must be

---

[6] In his reply brief, the petitioner attempts to distinguish *Ellison* from the instant case on several other grounds all of which we find baseless.

"sufficiently reasonable."). Therefore, we find that our analysis in *Ellison* is applicable to the present case.

In *Ellison*, this Court explained that "[w]e do not think that it is inherently unreasonable for the city to initially bill the owner of the property, whose identity is readily ascertainable, and to leave the question of who actually pays to the private parties involved." *Ellison*, 168 W. Va. at 473, 284 S.E.2d at 906. This reasoning remains valid in the instant case. An owner of rental property billed for ambulance service fees assessed on his rental property can pass the bill along to his renters or incorporate it into the amount of rent paid under the lease. Either way, the users of the ambulance service pay the ambulance service fee. Therefore, based on our reasoning in *Ellison*, we find that the ordinance provision at issue in this case, which makes an owner and a renter jointly and severally liable for the payment of emergency ambulance service fees, is a reasonable method of collecting the service fee from the users of emergency ambulance services. Therefore, we affirm the circuit court's ruling on this issue.

### C.    Assessment of Fee for Units Unoccupied on July 1

The petitioner's final assignment of error is that the circuit court erred when it ruled that the Morgan County ordinance does not violate W. Va. Code § 7-15-17 by assessing him ambulance service fees for units that were vacant on the date of assessment, which is July 1 of each year. According to the Morgan County ordinance at Section One:

20

Each Special Emergency Ambulance Service Fee imposed under this Ordinance shall be for emergency ambulance service provided for a Morgan County Fiscal Year from July 1 thru June 30th. The annual Special Emergency Ambulance Service Fee established by this Ordinance shall be Seventy-five – ($75.00) dollars, plus interest, depending upon time of payment, per residential living unit per Fiscal Year. Said fee may be adjusted annually upon approval of the Morgan County Commission.

In the event a resident user owns more than one living unit within Morgan County, that resident may not be charged more than one fee, provided that such other living unit is permanently unoccupied or occupied only by the resident user. Both occupant and owner shall be jointly and severally liable for payment of such fee for each living unit.

If a user believes that he/she is erroneously charged an ambulance service fee, the EMS agency shall provide, upon the resident's request, an exoneration form. The form shall be filled out by the resident/owner and returned to the EMS agency. The EMS agency shall, within a reasonable time, cause to be investigated any request for exoneration. The EMS agency shall, at its next regular meeting after completion of the investigation, make and communicate to the Morgan County Commission its recommendation regarding the exoneration. If good cause for exoneration is found by the Commission, said Commission shall exonerate or modify any or all imposed charges, and shall notify the property owner in writing of its actions. If the Commission does not exonerate or modify as requested by the property owner, an appeal may be filed, in pursuance to this article, with the Circuit Court of Morgan County.

The ordinance further provides in Section Three as follows:

The *Special Emergency Ambulance Service Fee* accounts established under this Ordinance shall be paid annually in the amount of Seventy five – ($75.00) utilizing the same fee payment and interest and discount schedule methods as for payment of Morgan County real and personal property taxes and fire fees.

21

The petitioner objects to paying the ambulance service fee for any of his rental units that are unoccupied, either temporarily or permanently, on July 1. In other words, the petitioner believes that he should not have to pay the service fee if the unit is unoccupied on July 1 even if the unit was occupied for some or all of the remainder of the year. According to the petitioner, if there is no occupant residing in the unit on July 1, there is no user to whom the ambulance service may be made available. The petitioner contends that imposing the fee for rental units unoccupied on July 1 violates syllabus point 1 of *Clay County Citizens* which requires an ambulance service ordinance to tie the burden of payment of the emergency ambulance service fee to usage of the ambulance service in a sufficiently reasonable way to satisfy the requirements of W. Va. Code § 7-15-17. The petitioner further contends that because the Morgan County ordinance provides that the collection of ambulance service fees is to utilize "the same fee payment and interest and discount schedule methods as for payment of Morgan County real and personal property taxes," this means that if there is no renter residing in a rental unit as of July 1, a user of ambulance services is not responsible for payment of the service fee for that assessment year.

In its ruling below, the circuit court reasoned that "it may be reasonably presumed in the absence of special circumstances, that properties held out for rent are likely to be occupied in the future." This Court agrees. Property held out for rent is not "permanently unoccupied" property for which the owner is exempt from payment of the

22

ambulance service fee as provided in the ordinance. Also, we believe that the circuit court's presumption that rental property is more likely than not to be occupied for at least a portion of the year is a valid one. During the time that the property is occupied, its residents are users of the emergency ambulance service. Finally, we are aware of no sound legal basis supporting the petitioner's position that he should not be assessed an ambulance service fee for rental property that is unoccupied on July 1. Therefore, we conclude that the service fee enacted by the Commission succeeds in imposing and collecting the service fee "from the users of emergency ambulance service within the county" as required by W. Va. Code § 7-15-17. Accordingly, we affirm the circuit court's ruling on this issue.

## IV.   CONCLUSION

For the reasons set forth above, this Court affirms the October 29, 2014, final order of the Circuit Court of Morgan County that granted relief to Respondent Morgan County Emergency Medical Services Board, Inc. in the Board's action against the petitioner for the collection of delinquent emergency ambulance service fees.

Affirmed.